ABOVEPEER, INC., Plaintiff,

v.

RECORDING INDUSTRY ASSOCIA-
TION OF AMERICA, INC.; A & M
Records, Inc.; Arista Records, Inc.;
Atlantic Recording Corp.; BMG Mu-
sic d/b/a the RCA Records Label;
Capitol Records, Inc.; Elektra Enter-
tainment Group, Inc.; Geffen Rec-
ords, Inc.; Interscope Records, Inc.;
Island Records, Inc.; LA Face Rec-
ords, a joint venture partnership be-
tween Arista Ventures, Inc. and LA
Face Records, Inc.; MCA Records,
Inc.; Motown Record Company L.P.;
Polygram Records, Inc.; Sire Records
Group, Inc.; Sony Music Entertain-
ment Inc.; Universal Records Inc.;
and Virgin Records America Inc., De-
fendants.

No. 01–CV–0632(LEK)(RWS).

United States District Court,
N.D. New York.

June 22, 2001.

**ORDER**

KAHN, District Judge.

Presently before the Court is Defendants' motion to dismiss or, in the alterna-tive, to stay or transfer Plaintiff's amended complaint pursuant to 28 U.S.C. § 1404(a). For the reasons stated herein, Defendants' motion is denied.

## I. BACKGROUND

Plaintiff owns and operates the Aimster system, a service through which users may exchange encrypted information or other data, including music, movies, pictures, software, and instant messages. The Re-cording Industry Association of America, Inc. ("the RIAA") is a not-for-profit trade organization whose members engage in the creation, manufacture, and sale of musical recordings. The RIAA, although repre-senting the interests of its members, does not own copyrights in any of their sound recordings. The remaining defendants are record companies owning copyrights to certain original sound recordings and are members of the RIAA.

On April 3, 2001, the RIAA, on behalf of its members, sent BuddyUSA, then the operator of the Aimster system, a cease-and-desist letter informing it that its sys-tem was enabling widespread infringement of its member companies' copyrights in various sound recordings. The letter also informed BuddyUSA that if it did not take steps to prevent the infringing activity within one week from the date of the let-ter, they would be left with "little choice but to seek additional legal remedies."

On April 11, just over one week later, John Cavalier, Chairman-designate of BuddyUSA, contacted Frank Creighton, Senior Vice–President of the RIAA and the author of the cease-and-desist letter, and agreed to a meeting on April 16, 2001 to discuss the dispute. That meeting was canceled, however, when BuddyUSA's rep-resentatives were unable to obtain a flight from Albany, New York, to Washington, D.C. A second meeting, scheduled for April 27, was canceled as well when Bud-

dyUSA informed the RIAA that it had divested itself of all interest in the Aimster system.

On Friday, April 27, 2001, the RIAA received a letter from BuddyUSA stating that it had "ceased administering the Aimster service," but nevertheless offering to meet with representatives of the RIAA to "discuss this matter further." The RIAA did contact BuddyUSA and scheduled a meeting for the following Monday, April 30.

That meeting also did not occur, as on April 30, 2001, Plaintiff filed a declaratory judgment action in this Court against the RIAA, captioned *AbovePeer, Inc. v. RIAA, et al.,* No. 01–CV–0632, seeking, among other things, a declaration that they were not "violating the copyright of any member of RIAA."[1] The complaints were later amended to add seventeen recording company defendants.

On May 24, 2001, two new actions were filed in the Southern District of New York asserting claims against AbovePeer, BuddyUSA, and their principal John Deep for, among other things, vicarious and contributory copyright infringement. The first, captioned *Zomba Recording Corp., et al. v. Abovepeer, Inc., et al.,* No. 01–CV–4452, was brought by twenty-two record companies, including, but not limited to, all but three of the seventeen record companies named in the amended complaint in this action. The second, captioned *Atlantic Recording Corp., et al. v. Abovepeer, Inc., et al.,* No. 01–CV–4460, was brought by twelve companies, among them filmed entertainment companies and record companies, including the remaining three record companies named in the amended complaint.

That same day, Plaintiff sought, and was granted by this Court, an injunction preventing the record company defendants named in the amended complaints, and those "acting in concert with them," from prosecuting the actions in the Southern District or elsewhere. On May 25, Plaintiff filed three new declaratory judgment actions in this Court, captioned *AbovePeer, Inc. v. Zomba Recording Corp., et al.,* No. 01–CV–0809, *AbovePeer, Inc. v. Motion Picture Assoc. of Amer., et al.,* No. 01–CV–0810, and *AbovePeer, Inc. v. Acuff–Rose Music Publishing, Inc., et al.,* No. 01–CV–0811. The following business day, May 29, 2001, the Court enjoined the Defendants in these actions from commencing or participating in any other legal actions against Plaintiff.

## II. ANALYSIS

In determining which of two competing actions should proceed, the well-established rule in this Circuit is that the first suit should have priority, absent special circumstances which justify giving priority to the second-filed suit or the showing of a balance of circumstances favoring the second suit. *See, e.g., City of New York v. Exxon Corp.,* 932 F.2d 1020, 1025 (2d Cir. 1991) ("the first court has jurisdiction to enjoin the prosecution of the second one"); *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978). A "strong presumption" generally applies in favor of the forum of the first-filed suit. *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 131 (S.D.N.Y.1994) (citing *Exxon,* 932 F.2d at 1025).

---

1. A separate, identical declaratory judgment action, captioned *BuddyUSA, Inc. v. RIAA, et al.,* No. 01–CV–0631, was filed by BuddyUSA. Defendants seek identical relief in that case. For the reasons stated in this opinion, that motion is also denied.

## A. Special Circumstances

■ One "special circumstance" justifying a departure from the first-filed rule occurs when a party brings a declaratory judgment action after receiving notice of a planned lawsuit by the other party. *See Factors,* 579 F.2d at 219; *Chicago Ins. Co. v. Holzer,* No. 00 Civ. 1062, 2000 WL 777907, at *3 (S.D.N.Y. June 16, 2000); *Mondo, Inc. v. Spitz,* No. 97 Civ. 4822, 1998 WL 17744, at *2 (S.D.N.Y. Jan.16, 1998); *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.,* 892 F.Supp. 486, 491 (S.D.N.Y. 1995). In determining whether sufficient notice has been given, courts in this Circuit have looked for mention of the intention to file a law suit, a filing date, and/or a specific forum for the filing of the suit. *See, e.g., Holzer,* 2000 WL 777907, at *2; *Mondo,* 1998 WL 17744, at *2; *J. Lyons,* 892 F.Supp. at 491; *Employers Insurance of Wausau v. Prudential Ins. Co. of Amer.,* 763 F.Supp. 46, 49 (S.D.N.Y.1991).

■ In *J. Lyons,* for example, declaratory judgment actions were brought by the alleged infringers following the receipt of cease-and-desist letters and prior to suit being filed by Lyons, the trademark holder. The letters demanded that the various alleged infringers cease-and-desist the alleged infringement and indicated that if they failed to do so, Lyons would be "constrained to pursue appropriate legal steps against" them and its attorneys would then be "authorized to consider taking suitable legal and equitable action."

The court held under those circumstances that the alleged infringers did not have actual notice of litigation. *See J. Lyons,* 892 F.Supp. at 491. Although the letters "mentioned the possibility of legal actions, [they] did not specify any date or forum." *Id.* The court found that rather than suggesting it was about to file suit, Lyon's actions were suggestive of negotiations. *See id.*

Likewise, in *Employers Insurance,* the court found that a similar cease-and-desist letter "was at best an attempt to initiate settlement negotiations and [could not] reasonably be construed as a notice of suit." *Employers Insurance,* 763 F.Supp. at 49. The "notice" letter in that case stated that the parties were "prepared and fully intend to pursue all remedies available" to them. *Id.* at 47–48. The court held that, because the notice letter did not explicitly mention a lawsuit, a tentative filing date, or a forum, "subsequent litigation commenced by the recipient would not reasonably suggest there had been a race to the courthouse." *Id.* at 49.

Like the cease-and-desist letters in *J. Lyons* and *Employers Insurance,* the RIAA's April 3, 2001 letter to BuddyUSA did not give actual notice of litigation. The RIAA's letter indicated, in very similar language, that if BuddyUSA did not comply with its demands, it would have "little choice but to seek additional legal remedies." It did not explicitly mention a lawsuit, much less indicate a filing date or forum. Accordingly, after considering the litigation situation as a whole, the Court determines that Plaintiff did not bring this action in anticipation of the filing of a lawsuit by Defendants. Instead, Plaintiffs brought their action for the very reason the Declaratory Judgment Act was created to:

"enable a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability."

*United States v. Doherty,* 786 F.2d 491, 498–99 (2d Cir.1986) (quoting Borchard, *Declaratory Judgments* 280 (2d ed.1941)).

Plaintiff was under a "reasonable apprehension ... that if it [continued] an activity it [would] be sued" and was therefore entitled to seek declaratory judgment. *800–Flowers*, 860 F.Supp. at 132. Plaintiff was not required to wait "until [its] adversary should see fit to begin suit." *Luckenbach Steamship Co. v. United States*, 312 F.2d 545, 548 (2d Cir.1963).

## B. Balance of Convenience

In analyzing the balance of convenience, courts consider the same factors used in a motion for a change of venue pursuant to 28 U.S.C. § 1404(a).[2] *See Comedy Partners v. Street Players Holding Corp.*, 34 F.Supp.2d 194, 196 n. 1 (S.D.N.Y.1999); *J. Lyons*, 892 F.Supp. at 491–92; *800–Flowers* 860 F.Supp. at 133. The factors to be considered by the Court "include (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *J. Lyons*, 892 F.Supp. at 492 (citing *800–Flowers*, 860 F.Supp. at 133). "[T]he balancing of conveniences is an equitable task and an 'ample degree of discretion is afforded the district courts in determining suitable forum.'" *800–Flowers*, 860 F.Supp. at 133 (quoting *Simmons*, 878 F.2d at 80).

### 1. *Location of Witnesses and Evidence*

■ "[T]he convenience of both party and non-party witnesses may be the single most important factor in the analysis of whether one forum is more appropriate than a competing forum." *800–Flowers*, 860 F.Supp. at 134; *see Aerotel, Ltd. v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y.2000). Rather than limit its "investigation to a review of which party can produce the longer witness list ... [a court] should look to the nature and quality of the witnesses' testimony with respect to the issues in the case." *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990).

■ In this case, the majority of the relevant testimony and evidence will center around what part the Aimster system plays in the alleged infringement of Defendants' copyrights. Accordingly, the majority of the relevant evidence and witnesses will be found here in the Northern District. Therefore, this factor weighs significantly in favor of keeping the action in the Northern District.

### 2. *Convenience of the Parties*

Plaintiff's principal place of business is located in Albany, New York, making this Court the more convenient forum for it. Many of the Defendants, on the other hand, have offices throughout the country. The RIAA, who oversees its members' copyright infringement litigation, is located in Washington, D.C., making neither forum more convenient. It is important to note that, when attempting to justify a departure from the first-filed rule, it is not enough to show that transfer, "rather than adding to the overall convenience, would merely shift some inconvenience from one party to the other." *Comedy Partners*, 34 F.Supp.2d at 196. Consequently, this factor does not weigh in favor of allowing the second-filed action to go forward.

---

**2.** Because the Court finds that these factors do not weigh in favor of the second-filed action, the alternative relief sought in Defendants' motion, a stay or transfer of the action pursuant to § 1404(a), must be denied as well.

### 3. *The Locus of Operative Facts*

The locus of the operative facts "is traditionally an important factor to be considered in deciding where a case should be tried." *800–Flowers*, 860 F.Supp. at 134; *see Aerotel*, 100 F.Supp.2d at 197. In this case, as discussed above, the operative facts will focus primarily on the Aimster system, the operator of which is located in the Northern District. Therefore, this factor militates strongly in favor of keeping the action in this Court.

### 4. *The Availability of Process to Compel Attendance of Unwilling Witnesses*

This factor does not weigh in favor of either forum, as both are located in New York. Therefore, "each district will be faced with this dilemma and [neither] has a significant advantage over the other." *J. Lyons*, 892 F.Supp. at 492.

### 5. *The Relative Means of the Parties*

This factor may be considered when "there is a disparity between the relative means" of the parties. *800–Flowers*, 860 F.Supp. at 134. Here, Defendants include some of the largest corporations in the country while Plaintiff is a recently formed computer software company, the very existence of which is endangered by this lawsuit. Plaintiff would clearly bear a "significant and disproportionate economic burden," *J. Lyons*, 892 F.Supp. at 492, and its "ability to effectively litigate could potentially be impaired," *800–Flowers*, 860 F.Supp. at 135, if it is forced to litigate in the Southern District. Therefore, this factor supports keeping the action in the Northern District.

### 6. *A Forum's Familiarity with the Governing Law*

Although the Southern District undoubtedly encounters more copyright actions than the Northern District, the courts of the Northern District are perfectly familiar with the intellectual property matters presented in this action. Therefore, this factor does not weigh in favor of either forum.

### 7. *Plaintiff's Choice of Forum*

A "plaintiff's choice of forum is given significant weight and will not be disturbed, unless the balance of factors weigh strongly in favor" of the Defendant. *800–Flowers*, 860 F.Supp. at 135 (citing *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 936 (S.D.N.Y.1989) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947))); *see Aerotel*, 100 F.Supp.2d at 197. However, a plaintiff's choice of forum will be accorded less weight "where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." *800–Flowers*, 860 F.Supp. at 135; *see J. Lyons*, 892 F.Supp. at 493. In this case, Plaintiff has chosen the forum that is both its home and the location of the operative facts of the case. Accordingly, this factor weighs heavily in favor of keeping the action in this Court.

### 8. *Trial Efficiency and the Interests of Justice*

Defendants argue that the presence of other parties in the Southern District not originally included in Plaintiff's action here require the Court to transfer this action so that, in the interest of judicial efficiency, all of the related actions may be tried in the same forum. It has long been the teaching of the Second Circuit that

> [t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both

parties and witnesses, and inconsistent results can be avoided.

*Wyndham Associates v. Bintliff,* 398 F.2d 614, 619 (2d Cir.1968); *see 800–Flowers,* 860 F.Supp. at 136.

■ Plaintiff makes several arguments in response. First, Plaintiff contends that the RIAA acts as agent for all of its member companies, who have therefore been present in this litigation since the filing of the first complaint. However, the RIAA is not a proper defendant in this declaratory judgment action because "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf." *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir.1991). Apparently recognizing this, Plaintiff has filed an amended complaint listing a subset of the record companies now involved in the various related suits, calling into question their contention that, by filing their action against the RIAA, the action was really instituted against all of its members.

Second, Plaintiff argues that if its pending motion to amend its complaint to add the remaining record companies not currently before this court is granted, the second amended complaint would relate back to the time of the original filing for purposes of the first-filed rule. The standards for relation back of amendments are set forth in Rule 15(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

An amendment of a pleading relates back to the date of the original pleading when

\* \* \* \* \* \*

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c). In other words, when adding additional parties, the relation back doctrine "applies only in cases involving 'a mistake concerning the identity of the proper party.'" *Nelson v. Adams USA, Inc.,* 529 U.S. 460, 467 n. 1, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000). Where, as here, a plaintiff clearly is aware of the additional parties and fails to name them in the original complaint, such failure "must be considered a matter of choice, not mistake." *Cornwell v. Robinson,* 23 F.3d 694, 705 (2d Cir.1994). Plaintiff cannot make a colorable argument that it was not aware of the record companies it now seeks to add to this action at the time of the filing of it original complaint, much less at the time of the filing of the first amended complaint. Therefore, Plaintiff's second amended complaint, if successful, will not relate back to the time of its initial filing. Consequently, those record companies not included in the first amended complaint who then brought actions in the Southern District filed-first in that forum.

Finally, Plaintiff argues that, in any event, the Court can enjoin the Southern District actions even though they involve additional parties. It is true that "[a]n injunction may properly issue to effectuate the policies of the first-filed rule 'even where the parties in the two actions are not identical.'" *Marshak v. Reed,* No. 96 CV 2292, 2000 WL 33152076, at \*3 (E.D.N.Y. Oct. 17, 2000) (quoting *Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir.1974)); *see Telephonics Corp. v. Lindly & Co.,* 291 F.2d 445, 447 (2d Cir.1961). "Parties whose 'interests are clearly aligned' may

be treated as if they were the same parties in deciding whether a later-filed actions should be stayed in deference to an earlier action." *Marshak*, 2000 WL 33152076, at *3 (quoting *Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F.Supp.2d 161, 165 (E.D.N.Y.1999)).

However, none of the cases cited by Plaintiff involve a second-filed action brought by separate, independent plaintiffs with distinct rights. *See Meeropol*, 505 F.2d at 235 (upholding injunction against a second-filed suit where the defendants in the two actions were connected by an indemnification agreement); *Telephonics*, 291 F.2d at 447 (where an alleged infringer had sued for declaratory judgment invalidity, a subsequent suit by the patent holder against the alleged infringer's customer would be enjoined where there was an indemnity agreement running from the alleged infringer to the customer and where the customer was added as a plaintiff in the suit for declaratory relief); *Marshak*, 2000 WL 33152076, at *3 (second-filed action against customers of alleged infringer in first-filed action enjoined because their respective rights would be resolved in the first action); *Shmuel*, 68 F.Supp.2d at 165 (second-filed action enjoined when brought by a subset of the defendants in the first action, but not by any additional parties); *Toy Biz, Inc. v. Centuri Corp.*, 990 F.Supp. 328, 332 (S.D.N.Y.1998) (involved issues, rather than parties, that were not identical).

The privity between the parties in the cases relied on by Plaintiff is not present in this case between the various record companies. Although the issues between the parties will be similar, each record company is a distinct party with its own rights. Accordingly, the Court cannot use the first-filed rule to enjoin the prosecution of separate litigation by those parties who actually filed first in the Southern District. To the contrary, it is the job of the Southern District to determine where these parties' actions will proceed, as it is the court in which they were first-filed. If Plaintiff wishes to bring these parties before this Court, it must seek the appropriate relief from the Southern District.[3]

■ Although there is a strong policy against litigating related claims such as these in different fora, the Court will not allow defendants before it to join in the filing of a different action in a separate forum with independent parties and thus escape this Court's jurisdiction and rob a plaintiff of its choice of forum. Accordingly, it is the Court's determination, in light of the overwhelming weight of the other factors in Plaintiff's favor and the strong presumption in favor of the plaintiff's choice of forum, that the balance of convenience mandates that the action remain before this Court.

### III.  CONCLUSION

Accordingly, it is

ORDERED that Defendants' motion to dismiss or, in the alternative, to stay or transfer is DENIED;

ORDERED that Defendants are enjoined from prosecuting or participating in the actions before the United States District Court for the Southern District of New York captioned *Zomba Recording Corp., et al. v. Abovepeer, Inc., et al.*, No. 01–CV–4452 and *Atlantic Recording Corp.*,

3.  For this reason, the Court has issued an order today in *Abovepeer, Inc. v. Zomba Recording Corp., et al.* lifting the injunction previously entered in that action. Moreover, the Court notes that the injunction previously entered in this action against Defendants and those "acting in concert with them" does not apply to the recording companies who filed their actions first in the Southern District.

*et al. v. Abovepeer, Inc., et al.,* No. 01–CV–4460;

ORDERED that the return date for Plaintiff's motion to amend the complaint and consolidate actions is August 3, 2001;

ORDERED that Defendants' response to that motion is due by July 20, 2001;

ORDERED that Plaintiff's reply, if any, is due by July 27, 2001; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.