EVEREST CAPITAL LIMITED, Plaintiffs,

v.

EVEREST FUNDS MANAGEMENT, L.L.C., Everest Funds and Vinod Gupta, Defendants.

No. 01 CIV. 4403(LTS)(AJP).

United States District Court, S.D. New York.

Jan. 8, 2002.

---

Seward & Kissel LLP (by Mark J. Hyland, Jeffrey M. Dine, Jonathon D. Matkowsky), New York City, for Plaintiff.

Owen & Davis, PC (by Robert D. Owen, Henry G. Burnett), New York City, Rob-

ins, Kaplan, Miller & Ciresi, L.L.P. (by Rita Coyle DeMeules, Raymond B. Eby), Minneapolis, MN, for Defendants.

## MEMORANDUM OPINION AND ORDER

SWAIN, District Judge.

This trademark action is before the Court on motions concerning the appropriate forum for the litigation. Plaintiff Everest Capital ("Everest Capital" or "Plaintiff") is a Bermuda corporation that provides investment management services and has its principal place of business in Bermuda. Defendants Everest Funds Management ("EFM") and Everest Funds ("EF"), both Delaware corporations, offer investment management services and operate principally out of the state of Nebraska. Vinod Gupta ("Gupta" and, with EFM and EF, "Defendants") is president and sole shareholder of EFM and also serves EF as its president and in other leadership positions. On May 18, 2001, following several months of correspondence between the parties' representatives concerning Plaintiff's assertion that Defendants' use of the term "Everest" violates Plaintiff's trademark rights, EFM filed in the United States District Court for the District of Nebraska, but did not serve, a complaint, in an action against Everest Capital, seeking a declaratory judgment on the issue of EFM's use of the term "Everest." [1] On May 23, 2001, Plaintiff Everest Capital commenced this action, seeking damages and injunctive relief, and Plaintiff served its complaint on Defendants on May 25, 2001.

Defendants seek to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction over the parties, or Rule 12(b)(3), for improper venue in this District, or on the grounds that EFM's action was the first filed. Alternatively, Defendants seek to have this action transferred to the United States Court for the District of Nebraska pursuant to 28 U.S.C. § 1404, or to stay the proceedings in this Court to allow the Nebraska action to go forward. Also pending before the Court is Plaintiff's cross-motion to preliminarily enjoin Defendants from further prosecuting the action commenced in the District of Nebraska. The parties do not dispute that the subject matter of the two actions is largely identical.

The Court has considered thoroughly all arguments made in support of and in opposition to the pending motions. For the reasons that follow, the instant action will be transferred to the United States District Court for the District of Nebraska.

### The "First–Filed" Rule

■ It is a "well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *First City Nat'l Bank and Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir.1989) (citing cases) (internal quotation marks omitted). This principle is known as the "first-filed rule." Although the filing of the Nebraska action preceded by five days the commencement of this case, Plaintiff argues that the Nebraska action should not be considered the first filed action for purposes of applying the rule because service of the complaint has not yet been effected in that action. EFM argues that its Nebraska action

---

1. Although it was EFM that filed the complaint in Nebraska, in the submissions filed in this action, the parties refer to EFM and the Everest Defendants interchangeably as the plaintiffs in that action, as does the Court in this opinion. The parties do not dispute that this and the Nebraska action involve the same parties and issues.

should nonetheless be treated as the first filed because EFM initially delayed serving the complaint in its Nebraska action only because it hoped that a consensual resolution might be achieved and that, since Everest Capital initiated the instant action, EFM has been attempting to serve the Nebraska complaint. EFM asserts that its efforts to effectuate service have thus far been thwarted by Plaintiff's refusal to waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure or authorize its counsel to accept service on its behalf, and that formal service on Plaintiff in Bermuda pursuant to Hague Convention procedures is now under way. Defendants argue that Second Circuit courts recognize filing, rather than service, as the operative event for purposes of the rule.

Ample discretion is left to the lower courts in administering multifaceted litigation; courts are not to apply rules rigidly or mechanically. *See Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 893 F.2d 26, 29 (2d Cir.1990). The Second Circuit has not addressed directly the question of whether an action is considered first filed for purposes of applying the rule where service of a complaint has not been properly effected prior to the filing and service of a complaint in a second action that involves the same parties and subject matter. Judges within this District have reached divergent results in cases in which this issue has arisen. *Compare Nat'l Patent Development Corp. v. American Hospital Supply Corp.,* 616 F.Supp. 114, 118 n. 7 (S.D.N.Y.1984) (noting that "[t]here is some support for [plaintiff's] position that jurisdiction over the person rather than the filing of the complaint is controlling for purposes of determining priority," but deciding priority based on concerns of fairness) *with Berisford Capital Corp. v. Central States,*

*et. al.,* 677 F.Supp. 220, 221 n. 1 (S.D.N.Y. 1988) (dismissing argument that first served action should be regarded as first filed for purposes of the rule). There is almost uniform recognition, however, of the general principle that mechanical application of a rule should not be determinative of the result in cases in which competing actions have been filed in close temporal proximity and service was not completed in the first case before the second was filed. As Judge Weinfeld put it:

> In the ... situation where each side, after a breakdown in settlement negotiations, engages in a race to the courthouse to achieve "first filed" status, the courts should be concerned with what the interests of justice require and not with who won the race.

*Nat'l Patent,* 616 F.Supp. at 118; *see also Ivy–Mar Co., Inc. v. Weber–Stephens Prods. Co.,* No. 93 Civ. 5973, 1993 WL 535166 (S.D.N.Y. Dec. 22, 1993) (first-filed rule applied to permit action first filed but second served to go forward, where traditional venue factors did not favor the other forum); *Aerotel, Ltd. v. Sprint Corp.,* 100 F.Supp.2d 189, 196 (S.D.N.Y.2000) (later service of amended complaint in first-filed action held to relate back pursuant to Fed. R.Civ.P. 15(c); "[i]n any event, even if defendants are correct in their assertion that Kansas wins the 'first-filed' contest, ... 'district courts need not slavishly adhere to the first filed rule, and' ... where circumstances dictate, 'great significance should not be placed upon the dates the actions were filed.'") (citation omitted). *Cf. Berisford Capital,* 677 F.Supp. at 222 n. 1 ("The 'first service' rule is not the law of this circuit, ... and I see no reason to vary from what is the more predictable and more easily enforced rule adopted by what appears to be the majority of courts.")

The circumstances surrounding the failure to serve the complaint in the Nebraska action militate in favor of deeming that suit the first filed. Everest Capital is fully aware of the Nebraska action and EFM has made diligent efforts to serve its complaint. Defendants represent that attempts to effect service include: requesting that counsel for Everest Capital accept service on behalf of its client, to which request Defendants did not receive a response (DeMeules Decl. in Supp. of Defts' Mot. to Dismiss, Transfer, or Stay ("DeMeules Decl."), sworn to on June 21, 2001, ¶ 5); seeking to identify a designated agent in the United States to accept service of process for Everest Capital (Second DeMeules Decl. in Supp. of Defts' Mot. to Dismiss, Transfer, or Stay, ("2nd DeMeules Decl."), sworn to Aug. 20, 2001, ¶ 3); issuing process pursuant to Rule 4(d) of the Federal Rules of Civil Procedure (DeMeules Decl. ¶ 5); and making a second attempt to obtain a waiver of service pursuant to Rule 4(d) when counsel for Everest Capital brought to Defendants' attention that the wrong Everest entity was named in the first Rule 4(d) notice (DeMeules Decl. ¶ 5).

At a pre-trial conference that was held in this matter on November 9, 2001, counsel for Defendants further represented that EFM had requested the Nebraska court to authorize service on Plaintiff in Bermuda pursuant to the Hague Convention, which request was granted on October 22, 2001, that EFM is continuing in its efforts to serve Everest Capital, and that the Nebraska district court has granted an extension of time to that end. (Tr. at 5.) It would be unjust to permit Everest Capital to benefit from the first-filed rule where, but for its success in resisting the effectuation of service, Defendants might have effected service in the Nebraska suit some time ago.

Accordingly, the Nebraska suit is properly regarded as the first filed. Absent any exception to the rule that would apply here, the Nebraska suit should be allowed to proceed.[2] The Court thus turns to the question of whether the litigation in this District should nonetheless take precedence, either because the balance of convenience favors litigation here or because special circumstances justify deviation from the first-filed rule. See, e.g., 800–Flowers, Inc. v. Intercontinental Florist, Inc., 860 F.Supp. 128 (S.D.N.Y.1994).[3]

*Exceptions to the First–Filed Rule: Balance of Convenience and Venue Concerns*

■ "The general rule in this Circuit is that, as a principle of sound judicial admin-

---

**2.** Everest Capital argues that, even if this Court finds that the filing of the Nebraska action takes precedence over the service of the complaint in the action in this Court for purposes of the first-filed rule, the Nebraska district court would take the opposite approach and is thus likely to defer to pending litigation in this Court. Everest cites for this proposition language in a 1993 Eighth Circuit decision referring to the attachment of jurisdiction as the operative event for purposes of the first-filed rule. See Northwest Airlines v. American Airlines, 989 F.2d 1002, 1005 (8th Cir.1993). The simplest response to this argument is that, if this Court determines that the litigation should go forward in Nebraska,

there will no longer be pending litigation in this Court.

**3.** These questions would ordinarily be addressed by the court in which the "first-filed" case is pending. See Citigroup, Inc. v. City Holding Co., 97 F.Supp.2d 549, 556 n. 4. However, because of the service issues outlined above, this Court is currently the only one with all of the relevant parties before it. At the core of the first-filed rule is the principle of sound judicial administration. See First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir.1989) ("The first to file rule embodies considerations of judicial administration and conservation of resources.").

istration, the first suit should have priority, absent the showing of balance of convenience in favor of the second action or unless there are special circumstances which justify giving priority to the second." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (internal quotation marks and citations omitted); *see In re Griffin Indus., Inc. v. Petrojam, Ltd.*, 58 F.Supp.2d 212, 216 (S.D.N.Y.1999); *Comedy Partners v. Street Players Holding Corp.*, 34 F.Supp.2d 194, 196 (S.D.N.Y.1999). It is within the sound discretion of the district court to determine whether substantive factors, including the balance of convenience, weigh against proceeding in the forum of the first filed action. *See Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 54 (S.D.N.Y.2001); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y.1977).

■ The factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a). *See Nat'l Patent*, 616 F.Supp. at 118. In deciding whether a case should be transferred pursuant to Section 1404(a), courts consider: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. Because the factors to consider are substan-

tially identical in weighing the balance of convenience for application of the first-filed rule and in ruling on a motion to transfer venue, a single analysis of the factors will resolve both issues. *Reliance v. Six Star*, 155 F.Supp.2d at 56.

The balance of convenience tips in favor of this action proceeding in Nebraska, as opposed to New York.

### Convenience of the Witnesses

■ The most significant factor to be decided on a motion to transfer venue is the convenience of party and non-party witnesses. *See TM Claims Service v. KLM Royal Dutch Airlines*, 143 F.Supp.2d 402, 405 (S.D.N.Y.2001). Here, that factor leans in favor of transferring this action to Nebraska. People who would likely be witnesses for Defendants are all located in Nebraska or the Upper Midwest. (Larson Decl. in Supp. of Defts.' Mot. to Dismiss, Transfer, or Stay ("Larson Decl."), sworn to June 21, 2001, ¶ 8.) Plaintiff has not asserted that anyone other than Malcolm Stott ("Stott"), the Chief Operating Officer and Director of Everest Capital, would be inconvenienced by appearing in Nebraska. Plaintiff points out that Stott would have to travel from Bermuda to the United States and then take a separate flight to Nebraska (presumably because there are no direct flights from Bermuda to Nebraska). (Aff. of Malcolm Stott ("Stott Aff."), sworn to July 23, 2001, ¶¶ 1, 16.) Plaintiff does note that it has a substantial number of brokers in this District (Stott Aff. ¶ 14), but does not specify whether or to what extent their testimony would be needed and has not provided the Court with information concerning the presence of brokers in and around Nebraska.[4] While Plaintiff asserts the presence

---

4. Plaintiff contends that Defendants fail to meet their burden as to this factor because they have not provided the Court with a list of

key witnesses and a general statement as to why the witnesses' testimony would be material to the dispute. Defendants have provided

of potential clients in this District, Plaintiff neither identifies particular witnesses nor explains their likely relevance to the matters in controversy here. (*See* Stott Aff. ¶¶ 9, 12, 13, 15 (referring to potential future investors and their connections to this District).) Defendants, the movants, have met their burden of showing that the balance of convenience tips in their favor with regard to this factor.

### Location of Relevant Documents and Ease of Access to Sources of Proof

■ The availability of documentary evidence weighs in favor of allowing the action to proceed in Nebraska. Everest Capital has not identified any documentary evidence it would need to retrieve from New York to defend the action in Nebraska. Despite the presence of a significant number of Plaintiff's brokers in New York (Stott Aff. ¶ 14), Plaintiff has not asserted that either the brokers or any documents in their possession would be necessary to prosecute the action. Defendants have indicated that all of their relevant documents, primarily relating to the formation of the Defendant entities and the use of the word "Everest" in connection with their services, are located in Omaha, Nebraska (Larson Decl. ¶ 8). Availability of documentary evidence thus weighs in favor of prosecution of the litigation in Nebraska.

### Convenience of the Parties

The parties would likely be significantly more inconvenienced by litigating this action in New York, as opposed to Nebraska. Defendant EFM has no offices or real property holdings in New York. (Larson

Decl. ¶ 3.) The Defendants operate their business in Nebraska and, to a limited extent, Milwaukee, Wisconsin. (Larson Decl. ¶ 8.) Plaintiff Everest Capital, a Bermuda corporation with its principal place of business in Bermuda, has not asserted that it has facilities for operation of its business in New York. Everest Capital asserts, rather, that it would be inconvenient for Stott to travel to Nebraska and that, if the action proceeds in this District, Stott would be able to attend to other business on his trips to this District. (Stott Aff. ¶ 16.) This is, simply, insufficient to tip the balance in favor of Everest Capital on the factor of convenience to the parties.

### Locus of Operative Facts

■ The locus of operative facts centers in Nebraska, rather than New York. Everest Capital argues that this District is the locus of operative facts based on the likelihood of confusion of the public in this District. Specifically, Plaintiff argues that: potential future investors or current investors in this District could be misled by reading about Defendants in popular New York publications, such as *The Wall Street Journal*, and then, seeking to learn more about Defendants' funds, may conduct a key word search on an internet search engine that would lead them to Defendants' web site, causing such potential and present investors to conclude that such web site is affiliated with, or endorsed by, Plaintiff (Stott Aff. ¶ 13), and that Defendants may thereby capitalize unfairly on Plaintiff's reputation; that Plaintiff's relationships with brokers of Everest Capital Funds portfolios could be soured if

---

the names and locations of anticipated witnesses. (*See* Larson Decl. ¶ 8.) In contrast, Plaintiff fails to assert that any identified witness hails from this District, referring instead to the possibility of confusion of "potential

future investors, or investors, in this District." Under these circumstances, Defendants' showing of inconvenience outweighs Plaintiff's, notwithstanding their failure to identify the specifics of the anticipated testimony.

brokers in this District become confused by the names and think that Plaintiff is using a different broker for its affiliate services (Stott Aff. ¶ 14); that a brokerage house may send confidential trade confirmations to the wrong business address (Stott Aff. ¶ 14); and that investment advisors in this District may get confused and base their advice to past, present and future investors of Everest Capital on Defendants' reputation (Stott Aff. ¶ 15). The information sources referred to by Plaintiff are essentially national ones, and the eventualities Plaintiff cites are too speculative to support a conclusion that this District constitutes the locus of operative facts. Defendants, in contrast, contend that they have no visible connection with this District (Defts.' Reply Mem. in Supp. of Mot. to Dismiss, Transfer, or Stay ("Defts.' Reply Memo") at 1), and point, instead, to their ties to Nebraska, including EFM's headquarters and the location of witnesses and documents there (Defts.' Reply Memo at 13). Where there has been no allegation that either party resides in this District or that the alleged infringer conducts business in this District, it is reasonable to conclude that this District is not the locus of operative facts. Given Defendants' connection to Nebraska, and Plaintiff's lack of a clear connection with this District, this factor weighs in favor of Defendants.

### Availability of Process to Compel Attendance of Unwilling Witnesses

■ Everest Capital asserts that critical witnesses are "members of the relevant public," Pl.'s Mem. in Opp. to Mot. to Dismiss, Transfer or Stay and in Supp. of Pl.'s Cross–Mot. to Preliminarily Enjoin Defts. from Further Prosecuting a Related Action ("Pl.'s Memo") at 16–17, and its investors, who are likely to be located in this District, "the financial center of the nation." (Pl.'s Memo at 13.) Plaintiff also asserts, however, that this is not a case in which live testimony will be necessary to the infringement analysis in light of the documentary evidence available. (Pl.'s Memo at 19.) Defendants, on the other hand, assert that EFM's only customer is the fund that it manages, The Everest3 Fund, and that neither entity has an investor who is a resident of New York. (Larson Decl. ¶ 3.) The anticipated witnesses Defendants identify are all likely to be located in Nebraska or in the Upper Midwest, according to Defendants.(Id.)

Neither party has shown persuasively that compulsory service of process for third party witnesses is likely to be more problematic in either forum. This factor therefore carries little weight in the balance of convenience, tipping slightly, if at all, in favor of Defendants because they have identified witnesses in the proposed transferee forum.

### Relative Means of the Parties

"Where a disparity exists between the means of the parties, a court may consider the relative means of the parties in determining venue." *Aerotel,* 100 F.Supp.2d at 197. The parties have not made it easy to discern their relative means. Defendants characterize the difference in the parties' resources as "staggering." (Mem. in Supp. of Defts.' Mot. to Dismiss, Transfer or Stay ("Defts.' Memo") at 8.) Defendants allege that Plaintiff has far greater resources at its disposal and claim that Plaintiff's assets under management range from $400 million to $2 billion (Defts.' Memo at 8; Larson Decl. ¶ 7), but fail to provide the Court with an estimation of their own resources for comparison. Everest Capital, on the other hand, indicates that it manages $275 million in assets in the "Everest Capital Funds," and speculates that Defendants must have ample

means to litigate the case, alleging that Gupta is "extraordinarily wealthy" and that Defendants "may be freely exploiting the resources of InfoUSA," a non-party corporate entity that Gupta heads. (Pl.'s Memo at 18.) Plaintiff also contends that defendant EF had $2.6 million in assets under management recently. (Id.) An undated article attached to a letter, dated April 6, 2001, from counsel for Plaintiff to counsel for Defendants indicates that the EFM fund held between $2.5 and $3 million. (Defts.' Not. of Mot., Ex. A.)

The Court declines to join Plaintiff in speculating about Defendants' possible use of personal or third party resources. The Court notes that the "assets under management" information provided by both sides is less than helpful—this rubric refers to funds of others held for management by the various investment entities and does not inform the reader as to the income, capital or expenses of the parties. Nonetheless, to the extent that a larger amount of assets under management suggests greater income by way of management fees, it appears that Plaintiff's resources are significantly greater than those of Defendants and that litigation in this District would likely pose a much greater burden on Defendants, given the extensive travel likely to be involved, than the burden posed on Plaintiff to litigate in Nebraska. This factor therefore weighs in favor of Defendants.

### Familiarity with the Governing Law

■ The forum's familiarity with governing law favors neither party. Although Everest Capital asserts state law claims, such claims are corollary to their federal trademark claims and do not present complex questions of law. See Merkur v. Wyndham Int'l; No. 00 Civ. 5843, 2001 WL 477268, at *5 (S.D.N.Y. March 30, 2001) "Where an action does not involve complex questions of another state's laws, courts in this district accord little weight to this factor on a motion to transfer venue" (citing Vassallo v. Niedermeyer, 495 F.Supp. 757, 759 (S.D.N.Y.1980)). Furthermore, the presence of a question of New York state law is not more significant than the convenience to the parties and witnesses, factors that weigh heavily in favor of transfer of this action. See id.

### Weight Accorded Plaintiff's Choice of Forum

■ The weight accorded plaintiff's choice of forum favors Defendants. Defendants are entitled to the benefit of choosing their own forum because, although they are named as defendants in this action, for purposes of this analysis they are the true plaintiffs in interest because, as explained below, the suit commenced in Nebraska was not initiated by an improper anticipatory filing. See Ontel Prods., Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1153 (S.D.N.Y.1995) (where there was no improper anticipatory filing, court should afford plaintiff in the first-filed case the benefit of choice of forum). Furthermore, even if Everest Capital were regarded as having the choice of forum benefit by virtue of its role as plaintiff in this suit, where the plaintiff is foreign, its choice of forum is entitled to less weight. See Iragorri v. United Technologies Corp., 274 F.3d 65 (2d Cir.2001) (choice of a United States forum by a foreign plaintiff is entitled to less deference); SMT Shipmanagement & Transport Ltd. v. Maritima Ordaz, No. 00 Civ. 5789, 00 Civ. 6352, 01 Civ. 0013, 2001 WL 930837, at *6 (S.D.N.Y. Aug.15, 2001). Plaintiff's choice of forum weighs, therefore, in favor of transferring this action to Nebraska.

### Trial Efficiency and Interests of Justice

■ This factor is based on the totality of the circumstances and may be determi-

native, depending on the particulars of a given case. *See TM Claims Service,* 143 F.Supp.2d at 407. Here, the totality of the circumstances supports transfer of this action to Nebraska. Nebraska is the only forum to which any of the parties has a clear connection, and is also the forum of choice of the plaintiff in the first-filed suit. Given Everest Capital's conduct in connection with service of process in the Nebraska action and this Court's conclusion that the Nebraska suit was not commenced with an improper anticipatory filing,[5] Defendants are especially deserving of the deference accorded their choice of forum.

■ In sum, the balance of convenience and interests of justice weigh in favor of transfer of this action to Nebraska.

*Special Circumstances*

■ The final issue to be addressed in connection with the first-filed rule is whether special circumstances justify deviation from the general application of that rule. Special circumstances justifying an exception to the rule exist where the first suit is prompted by an "improper anticipatory filing" or was solely the result of forum shopping. *Reliance Ins. Co.,* 155 F.Supp.2d at 54. Plaintiff has failed to show that the improper anticipatory filing exception to the first-filed rule applies here. *See id.* (party opposing application of the rule has burden to show existence of special circumstance warranting departure).

Plaintiff asserts that it pursued settlement discussions in an attempt to avoid wasting judicial resources and that Defendants "lured Everest Capital into believing settlement discussions were still ongoing in order to exploit the First–Filed Principle." (Pl.'s Memo at 9.) Plaintiff's assertion of

concern for the conservation of judicial resources is belied by the filing in this district of its suit, which mirrors the Nebraska action, and Everest Capital's resistance to receipt of process of service in the Nebraska action, which resistance appears itself to have wasted limited judicial resources by requiring the intervention of the Nebraska district court.

In determining whether there was an improper anticipatory filing, courts look to the nature of the first filed action (whether it was a declaratory judgment action), and whether it was filed after sufficient notice of a planned lawsuit by the other party. *See Abovepeer, Inc. v. Recording Ind. Ass'n of America, Inc.,* 166 F.Supp.2d 655, 658 (N.D.N.Y.2001), *aff'd sub nom. BuddyUSA, Inc. v. Recording Ind. Ass'n of America, Inc.,* Nos. 01–7760, 01–7761, —— F.3d ——, 2001 WL 1220548 (2d Cir.2001).

The fact that an action is one seeking a declaratory judgment does not, however, necessarily mean that it is an improper anticipatory filing. *See id.,* 166 F.Supp.2d at 658 noting that plaintiff brought the initial action for the reason the declaratory judgment was created, to " 'enable a party who is challenged, threatened, or endangered in the enjoyment of what he claims to be his rights, to initiate the proceedings against his tormentor and remove the cloud by an authoritative determination of plaintiff's legal right, privilege and immunity and the defendant's absence of right, and disability.' " citing *United States v. Doherty,* 786 F.2d 491, 498–99 (2d Cir. 1986) (quoting *Declaratory Judgments* 280 (2d ed.1941)). Here, the parties' correspondence and communications regarding the trademark dispute went on for approximately five months before the Nebraska action was commenced. Given the nature, tone and duration of this correspondence,

5.  *See infra.*

Defendants were under a reasonable apprehension that if they continued the activity in issue, they would be sued. Under these circumstances it was not inappropriate for them to seek a declaratory judgment. *See Abovepeer,* 166 F.Supp.2d at 658. Defendants were not required to wait " 'until [their] adversary should see fit to begin suit' " to take steps to protect their ability to use their name. *See id.* (quoting *Luckenbach Steamship Co. v. United States,* 312 F.2d 545, 548 (2d Cir. 1963)); *Ontel,* 899 F.Supp. at 1151.

There is, furthermore, no indication that Defendants were engaging in improper forum shopping when they initiated suit in Nebraska. "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." *Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1158 (S.D.N.Y.1996) (internal quotation marks and citation omitted). Given that the locus of Defendants' business is in Nebraska, as are anticipated witnesses and documents relevant to the issues raised by the litigation, their choice of a court in Nebraska is not indicative of improper forum shopping. *See Novo Nordisk v. Genentech, Inc.,* 874 F.Supp. 630, 633 (S.D.N.Y.1995) (finding that defendant could not meet its burden of showing that the New York action was motivated by forum shopping where the plaintiff's principal place of business was in the Southern District of New York).

The Court finds, under the circumstances of the case, that EFM's commencement of the Nebraska action did not constitute an improper anticipatory filing or impermissible forum shopping.

The balance of convenience weighing in favor of allowing the Nebraska action to proceed, and there being no other special circumstances to overcome the presumption that the forum in which an action is first filed is where such action should proceed, the litigation will be permitted to go forward in Nebraska.

*Dismissal or Transfer*

▮ Defendants' motion seeks dismissal of the instant action or, in the alternative, transfer of this action to the Nebraska forum. In light of the difficulties that EFM has encountered in effectuating service of process in the Nebraska action and given that all parties have thus far participated in litigation of the instant action, the Court will grant Defendants' motion insofar as it seeks to transfer this case to the United States District Court for the District of Nebraska. As explained above, the factors relevant to the determination of whether to transfer an action pursuant to 28 U.S.C. § 1404(a) favor the Nebraska forum. The Nebraska court will be in a better position to determine whether this action should be consolidated with the pending action or dismissed, and to address any remaining personal jurisdiction issues.

*Conclusion*

For the reasons stated above, Defendants' pending motion is granted insofar as it seeks transfer of this action to the United States District Court for the District of Nebraska. The motion is denied insofar as it seeks dismissal of the action or a stay of proceedings in this Court. In light of the Court's determination that the parties' litigation should proceed in Nebraska, Plaintiff's cross-motion to enjoin preliminarily the Nebraska litigation is denied. SO ORDERED.