### XPRESSIONS FOOTWEAR CORP., Plaintiff,

v.

### Tom PETERS, Defendant.

### No. 94 Civ. 6136 (JGK).

United States District Court, S.D. New York.

May 16, 1995.

**631**

Abraham J. Faur, New York City by Abraham Faur, for Xpressions Footwear Corp.

Proskauer Rose Goetz & Mendelsohn, New York City by Walter Eliot Bard, Mackall, Crounse & Moore PLC, Minneapolis, MN by D. Clay Taylor, for Tom Peters.

*OPINION & ORDER*

KOELTL, District Judge:

This is an action for contract damages and declaratory relief in which jurisdiction is based on diversity of citizenship. The plaintiff, Xpressions Footwear Corporation ("Xpressions"), a New York corporation with its principal place of business in New York, alleges in the complaint as follows. On August 1, 1993, Xpressions entered into an oral sales representative agreement (the "Agreement") with the defendant Tom Peters, a resident of Colorado. Peters was to act as an exclusive agent for Xpressions in thirteen states in the Midwest. Xpressions agreed to pay him a commission on the sales of shoes he generated and a monthly draw as an advance against the commissions he would generate. Peters was to pay back to Xpressions any excess of the draw over the commissions he actually earned. He did not generate any sales from August 1, 1993 until January 21, 1994. Xpressions terminated the Agreement, effective January 21, 1994, on account of his failure to generate sales.

In the present action, Xpressions seeks to recover the $52,500 that it paid Peters as a draw, alleging that he breached the contract by, among other things, failing to generate sales, failing to adequately represent Xpressions as a sales representative, and failing to pay back the excess draw he received. Xpressions also seeks declaratory relief that the Agreement with Peters was properly terminated because Peters contends that the Agreement was improperly terminated and that Xpressions is therefore liable to him.

Peters has sued Xpressions and Premier Footwear, Inc., an allegedly related company, in the District of Colorado, alleging that the companies breached their contract with him and that they are also liable to him under a theory of promissory estoppel and a Minnesota statute governing the termination of sales representatives (the "Colorado Action"). The Colorado Action has been consolidated with another complaint by another former sales representative against the same defendants.

Peters now moves to dismiss this action, or, in the alternative, to stay the action while the Colorado Action proceeds or to transfer

this action to the District of Colorado pursuant to 28 U.S.C. § 1404(a). The motions are denied for the reasons explained below.

## I.

Peters argues, first, that the action should be dismissed because it is an improper effort to use a declaratory judgment action as a means to "forum shop." He asserts this action is nothing more than an effort to preempt the Colorado Action. This action was filed on August 26, 1994, whereas the Colorado Action was filed on October 7, 1994. Peters alleges that Xpressions led him to delay his filing of the Colorado Action with talk of possible settlement and then rushed to bring the current suit, which he alleges is nothing more than an effort to obtain a declaratory judgment that the Colorado Action does not present a valid cause of action.

■ The defendant's argument fails. This action seeks far more than a declaration that Xpressions did not violate the Agreement. It seeks the return of the commissions paid to Peters which he allegedly committed to repay and thus seeks significant affirmative relief which Xpressions claims is the most important part of the dispute and which is, in any event, a claim distinct from the claim in the Colorado Action.

Moreover, the evidence proffered by both parties belies the defendant's claim that this action is simply an effort to win the race to the courthouse and an attempt to foreclose the Colorado Action. The correspondence reflects that Xpressions made an effort to settle this matter before filing suit and gave notice that it would file suit if the matter was not settled. On August 23, 1994, Xpressions' general counsel faxed a letter to Peters' counsel explaining that the shareholders of Xpressions had met, that no settlement would be paid to Peters, that Peters would be required to repay $52,500 to Xpressions, and that if Peters' counsel did not respond in three days, "we will assume that there is no desire for an amicable resolution, and we will immediately seek redress otherwise." The letter demonstrates that Xpressions was then maintaining a claim for relief independent of the claim that was to be asserted in the Colorado Action and that Xpressions did provide notice of this claim to Peters well before the Colorado Action was brought. This lawsuit is not an anticipatory declaratory judgment action. It is not an effort to jump the gun on the Colorado Action. *Cf. Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978) (affirming that a declaratory judgment action should not be a prize to the winner of a race to the courthouse), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Great American Ins. Co. v. Houston General Ins. Co.*, 735 F.Supp. 581, 586 (S.D.N.Y.1990) (Leisure, J.) (finding that "the misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action militates in favor of dismissing the declaratory judgment action"); *Cooperative Centrale Raiffeisen–Boerenleen Bank B.A. v. Northwestern Nat'l Ins. Co.*, 778 F.Supp. 1274, 1278–79 (S.D.N.Y.1991) (Patterson, J.) (holding that the "first filed rule" should not be mechanically applied when a declaratory judgment action is filed in anticipation of a coercive action).

## II.

■ The defendant also seeks to transfer this case to the District of Colorado pursuant to 28 U.S.C. § 1404(a).[1] The plaintiff selected the Southern District of New York and that choice is entitled to considerable deference. *See, e.g., Mibar Enterprises, Ltd. v. NEC Information Systems, Inc.*, 745 F.Supp. 193, 195 (S.D.N.Y.1990); *Manufacturers*

---

1. At oral argument, the defendant abandoned the argument that this lawsuit should be dismissed because of improper venue. If venue were improper, it could be transferred to a proper district under 28 U.S.C. § 1406(a). The complaint alleges that the oral agreement was "negotiated and finalized in New York City." Complaint ¶ 6. The complaint alleges sufficient facts under 28 U.S.C. § 1391(a) to establish that "a substantial part of the events or omissions giving rise to the claim" occurred in the Southern District of New York. *See, e.g., National Cathode Corp. v. Mexus Co.*, 855 F.Supp. 644, 648 (S.D.N.Y.1994) (Leisure, J.) (finding that "a substantial part of the events ... giving rise to the claim" occurred in New York and that venue in the Southern District was thus proper where discussions at a trade show in New York eventually led to the sales representative contract in dispute.)

*Hanover Leasing Corp., v. Ace Drilling Co.,* 720 F.Supp. 48, 50 (S.D.N.Y.1989); *Stinnes Interoil, Inc. v. Apex Oil Co.,* 604 F.Supp. 978, 984 (S.D.N.Y.1985). The defendant bears the burden of showing that the plaintiff's choice of forum should be overturned. *See Factors,* 579 F.2d at 218 ("[T]he burden is on the defendant, when it is the moving party, to establish that there should be a change of forum."); *Cento Group, S.P.A. v. OroAmerica, Inc.,* 822 F.Supp. 1058, 1060 (S.D.N.Y.1993) (Sweet, J.).

■ The convenience of the parties and witnesses and the interests of justice argue strongly that this case should not be transferred from the Southern District of New York. More specifically, the factors to be considered are: (1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the conveniences of witnesses; (4) the relative ease of access to sources of proof; (5) the availability of process to compel attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice. *See Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.,* 774 F.Supp. 858, 867–68 (S.D.N.Y.1991); *Don King Prods., Inc. v. Douglas,* 735 F.Supp. 522, 533 (S.D.N.Y. 1990); *Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967); *Richardson Greenshields Sec., Inc. v. Metz,* 566 F.Supp. 131, 134 (S.D.N.Y.1983).

■ In this case, a substantial portion of the operative facts occurred in New York. The Agreement was negotiated and finalized in New York by a New York Corporation and the defendant came to New York at least twice in connection with entering into the Agreement. The defendant also attended two trade shows in New York in an effort to perform under the Agreement. Colorado was only one of thirteen states in which the plaintiff attempted to generate sales and Xpressions argues that none of the alleged sales developed by the defendant were ever finalized.

While Colorado would be a more convenient forum for the defendant, New York is a much more convenient forum for the plaintiff. It is not unfair to require the defendant to defend this action in New York since he came to New York to negotiate the Agreement and to attend trade shows.

The plaintiff's witnesses here would provide critical testimony regarding the terms and conditions of the Agreement and its negotiation, whereas the defendant has not shown the existence of more numerous witnesses in Colorado. *See Factors,* 579 F.2d at 218 ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover"). Peters' sales territory did not include New York and therefore the majority of any contract performance took place outside of New York. However, it appears that a majority of any contract performance did not take place in Colorado either, because the sales territory included thirteen states of which Colorado was only one. There would thus be more critical witnesses in New York than in Colorado and to the extent that testimony from witnesses outside of New York is necessary, that testimony can be presented by deposition.

With regard to the familiarity of the forums with the governing law, while it is not necessary to decide finally the substantive law to be applied to this case, it is clear that there is no reasonable argument that Colorado law should be applied to a case involving an alleged agreement negotiated and finalized in New York by a New York resident plaintiff with a Colorado resident and which was to be performed in numerous states. To determine the substantive law to be applied in this diversity case, this Court would apply New York conflicts of law principles. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). New York courts would apply a center of gravity test, which, in this case, would strongly favor application of New York law. *See AFP Imaging Corp. v. Philips Medizin Systeme Unternehmensbereich Der Philips GmbH,* 1994 WL 652510 at *3 (S.D.N.Y.1994) (finding that under the "center of gravity" test the most significant contacts in a contract dispute are "the place of contracting, negotiation, and performance;

the location of the subject matter of the contract; and the domicile of the contracting parties"). Therefore, this Court's familiarity with New York law counsels against transfer.

With regard to judicial efficiency, the courts in Colorado and New York would both deal expeditiously with this lawsuit. The defendant argues that given the pending lawsuit against Xpressions in Colorado by yet another discharged sales representative, which has been consolidated with the Colorado Action, Colorado is the only forum that can dispose efficiently of all of the lawsuits. However, the ultimate fate of the Colorado Action is unclear since there is a pending motion to dismiss it and, in any event, a decision on the claim for a declaratory judgment in this case may well provide sufficient guidance to the parties to resolve all the lawsuits.

For the foregoing reasons, the defendant has not shouldered his burden of demonstrating that the plaintiff's choice of a proper forum should be disregarded and that this action should be transferred to the District of Colorado. The motion to transfer is therefore denied.

### III.

Considerations of judicial efficiency and the interests of justice also do not provide the basis for a stay of this action at this time. It is unclear what will happen with the actions in Colorado. If those actions proceed, it may well be possible for the parties to coordinate them with this action and to cooperate in discovery. If the parties find themselves involved in duplicative litigations, the parties can make appropriate applications at that time to stay. The motion to stay is therefore denied without prejudice to renewal.

### IV.

The defendant had originally argued that this action should be dismissed for failure to allege proper venue. That argument was abandoned. *See* n. 1, *supra*. In its reply brief, the defendant offered a new basis for its motion to dismiss, arguing that under both New York and Colorado law Xpressions lacked "standing" to demand reimbursement of the defendant's draw in the absence of "an express or implied agreement." The fact that this alleged basis for dismissal was not raised until the reply brief would be reason enough to reject it. *See, e.g., United States v. Gigante,* 39 F.3d 42, 50 n. 2 (2d Cir.1994); *Firma Melodiya v. ZYX Music GmbH,* No. 94 Civ. 6798, 1995 WL 28493 at *4 n. 3 (S.D.N.Y. Jan. 25, 1995); *Kalso Systemet, Inc. v. Jacobs,* 474 F.Supp. 666, 669 n. 2 (S.D.N.Y.1979). In any event, the Complaint expressly alleges as a matter of contract that Peters agreed "to pay Xpressions the excess of the Draw received over the Commission actually earned." Complaint ¶ 6. This allegation raises an issue of fact that cannot be decided on a motion to dismiss.

### V.

The defendant's motion to dismiss is denied as is the defendant's motion to transfer this action to the District of Colorado. The defendant's motion for a stay is denied without prejudice to renewal.

The parties are directed to complete discovery by July 28, 1995. Dispositive motions, if any, are to be served by August 18, 1995 in accordance with this Court's rules. A conference is scheduled for August 29, 1995 at 4:00 p.m.

**SO ORDERED.**