**Gadi SCHNABEL, Plaintiff,**

v.

**RAMSEY QUANTITATIVE SYSTEMS, INC., Defendant.**

**No. 03 CIV. 8771(AJP).**

United States District Court,
S.D. New York.

June 25, 2004.

J. Rodman Steele, Diane Churchill, Akerman Senterfitt, West Palm Beach, FL, Joseph T. Murray, Hart, Baxley, Daniels & Holton, New York City, for Plaintiff.

William B. Flynn, McCabe & Flynn, L.L.P., New York City, for Defendant.

## OPINION & ORDER

PECK, Chief United States Magistrate Judge.

Plaintiff Gadi Schnabel brought this action for a declaratory judgment to "quiet title" to his "Selector" computer program and for breach of his employment contract with defendant Ramsey Quantitative Systems, Inc. (*See generally* Dkt. No. 1: Compl.) After the filing of this action but before Ramsey was served with it, Ramsey filed suit against Schnabel in the United States District Court for the Western District of Kentucky. (Dkt. No. 2: Ramsey Motion to Dismiss or Transfer (hereafter, "Ramsey Motion"), Ex. 6: W.D. Ky. Compl.)

Presently before this Court is Ramsey's motion to dismiss this action in favor of the Kentucky action under an exception to the "first filed rule," or in the alternative to transfer this action to the Western District of Kentucky, where Ramsey's action against Schnabel is pending.

The parties have consented to determination of this action by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 21: 5/11/04 Consent to Jurisdiction.)

For the reasons discussed below, Ramsey has not met its heavy burden of showing "special circumstances" to justify dismissing this first filed action, nor has Ramsey met the heavy burden of showing that an exception to the first filed rule or transfer to Kentucky under 28 U.S.C. § 1404(a) is appropriate "for the convenience of the parties and witnesses, in the interest of justice," and therefore Ramsey's motion to dismiss or transfer is *DENIED.*

## FACTS

Plaintiff Gadi Schnabel, a resident of New York who works in the equity trading industry, developed a software program for an equity trading strategy model. (Dkt. No. 12: Schnabel Aff. ¶¶ 2–4.) Defendant Ramsey is an asset management firm specializing in systematic programs with its principal place of business in Louisville, Kentucky. (Dkt. No. 1: Compl. ¶ 3; Dkt. No. 27: Answer ¶ 3; Dkt. No. 2: Ramsey Motion Ex. 1: Neil Ramsey Aff. ¶ 2; Dkt. No. 2: Ramsey Motion Ex. 6: W.D. Ky. Compl. ¶ 2.) Ramsey employed Schnabel "to assist the company in developing an equity trading strategy model, later named G–Pairs." (Ramsey Aff. ¶ 4.)

Schnabel began developing his equity trading computer software program named "Selector" in 2000. (Schnabel Aff. ¶¶ 3–4.) In October 2002, while working for Credit Suisse as a hedge fund analyst, Schnabel was sent to Louisville to conduct business with Ramsey. (Schnabel Aff. ¶ 5.) During his visit, Schnabel met with Ramsey's President Neil Ramsey and discussed Schnabel's fund tracking software program and the fund tracking system Schnabel

had implemented for Credit Suisse. (Schnabel Aff. ¶ 5.) They began preliminary discussions concerning a possible future business relationship. (Schnabel Aff. ¶ 5.) Schnabel continued to correspond with Ramsey concerning possible employment, and on January 21, 2003, Schnabel met with Neil Ramsey in New York to discuss specific terms of employment. (Schnabel Aff. ¶ 7; Ramsey Aff. ¶ 3.) After email drafts of an employment agreement, in February 2003 Schnabel accepted via email an offer of employment based on the terms initially discussed in New York as further developed via the emails. (Schnabel Aff. ¶¶ 8–9.)[1] Schnabel met with Neil Ramsey two more times in New York before Schnabel and his wife moved to Louisville, Kentucky on May 4, 2003 and commenced employment with Ramsey on May 5, 2003. (Schnabel Aff. ¶¶ 10–11.) During his employment with Ramsey in Kentucky, Schnabel maintained his New York apartment. (Schnabel Aff. ¶ 2.)

Ramsey hired Schnabel "to assist the company in developing an equity trading strategy model, later named G–Pairs." (Ramsey Aff. ¶ 4.) Schnabel claims, however, that he completed development of his workable and tradable computer program before beginning employment with Ramsey, and that Schnabel and his father, Israel Schnabel, were already trading with the program in 2002. (Schnabel Aff. ¶ 4; Dkt. No. 6: Israel Schnabel Aff. ¶¶ 3–4.) Schnabel claims that he continued development of his Selector computer program independently at Ramsey, and that other Ramsey employees made small contributions by helping him integrate the program with Ramsey's execution platform and resolve compatibility problems between disparate file formats. (Schnabel Aff. ¶ 12.) In contrast, Ramsey claims that Schnabel's program was not functional prior to Schnabel's employment with Ramsey. (Dkt. No. 2: Ramsey Motion Ex. 3: Satterfield Aff. ¶¶ 4–5.) Neil Ramsey claims that the program was still being developed at Ramsey and that he personally "integrated into [the program] trade secrets and other confidential proprietary information," and made "alterations to portfolio logic, changes to selection and sizing routines, and creation of the process for sending executable orders to the equity markets." (Ramsey Aff. ¶ 6; Satterfield Aff. ¶ 5.) Schnabel, however, claims Neil Ramsey's contributions to Selector were "insignificant and only served to make the program compatible with [Ramsey's] existing systems." (Schnabel Aff. ¶ 13.) Ramsey eventually used the G–Pairs program to invest $20 million in capital. (Ramsey Aff. ¶¶ 7–8; Satterfield Aff. ¶ 6.)

After five months, Schnabel became discouraged with his opportunities to contribute to and benefit from his employment with Ramsey. (Schnabel Aff. ¶ 14.) Although Schnabel was hired as Director of Fundamental Factor Research, he claims he was excluded from almost all research meetings, prevented from participating in important decision making, and refused information concerning Ramsey's trading system that would allow him to improve the system he implemented. (Schnabel Aff. ¶¶ 14–15.) Schnabel asserts that he was "treated like a programmer" and was only employed so that Ramsey could gain control over his Selector program. (Schnabel Aff. ¶ 14.) Schnabel resigned from Ramsey on October 16, 2003 and returned to New York on October 27, 2003. (Schnabel Aff. ¶ 17.) Upon leaving, Schnabel deleted from Ramsey's computer the

---

1. The written draft Offer of Employment stated that Ramsey was hiring Schnabel "to add [to] the overall depth of the RQSI [i.e., Ramsey] product development team," "to create a new product," "be responsible for all fundamental research of RQSI," and "add value where he can ... in the overall upgrade of the business." (Schnabel Aff. Ex. A: 1/21/03 Draft Offer of Employment; see also Ramsey Aff. ¶ 4.)

company's only copy of the G–Pairs program. (Ramsey Aff. ¶ 9.) As a result, Ramsey claims that it was forced to liquidate its positions associated with the model and sustained economic harm due to loss of the G–Pairs program. (Ramsey Aff. ¶¶ 10–11.)

Schnabel claims that he never transferred his "intellectual property rights in [his] Selector trading program" to Ramsey, nor did he agree that Ramsey could use the program beyond his employment. (Schnabel Aff. ¶ 26.) Schnabel contends that he never signed the Employee Non–Disclosure Agreement, and that it never existed in his personnel file. (Schnabel Aff. ¶ 22.) In contrast, Neil Ramsey claims that Schnabel executed an Employee Non–Disclosure agreement when he was in Louisville but that Schnabel confiscated it when he resigned. (Ramsey Aff. ¶ 5; Dkt. No. 3: Ramsey Br. at 3.)

On October 29, 2003, Ramsey sent an email to Schnabel threatening that Ramsey would "take 'all necessary action to protect [its] interests.'" (Dkt. No. 13: Schnabel Br. at 10.) On November 3, 2003, Neil Ramsey emailed a letter to Schnabel in an attempt to resolve issues arising out of Schnabel's resignation. (Ramsey Aff. ¶ 12 & Att. 11/3/03 Letter.) In the letter, Ramsey demanded Schnabel return the proprietary information and Non–Disclosure Agreement and explain why Schnabel believes he has rights to the computer program. (Ramsey Aff. Att.: 11/3/03 Letter.) The letter referred to attempting to "sort this out and come to an understanding" and to try to keep it between Schnabel and Neil Ramsey. (*Id.*)

***Schnabel's Suit Against Ramsey in This Court***

Two days after that letter, on November 5, 2003, Schnabel filed a Complaint in this Court asserting claims for breach of contract and seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, that he was the owner of all intellectual property rights associated with Selector. (Dkt. No. 1: Compl. ¶¶ 1, 14–25.) On December 17, 2003, before being served with Schnabel's S.D.N.Y. Complaint,[2] Ramsey filed its Complaint in the United States District Court for the Western District of Kentucky. (Dkt. No. 3: Ramsey Br. at 4; Dkt. No. 2: Ramsey Motion Ex. 6: W.D. Ky. Complaint.) Ramsey's W.D. Ky. complaint alleges that Schnabel: (1) violated the Computer Fraud and Abuse Act; (2) breached his contract and Employee Non–Disclosure Agreement; and (3) misappropriated confidential information in violation of the Kentucky Uniform Trade Secrets Act. (Ramsey Br. at 4; W.D. Ky. Complaint.) Schnabel signed a waiver of service for the Kentucky complaint on January 29, 2004. (Dkt. No. 13: Schnabel Br. at 8; *see* Ramsey Br. at 4.)

On June 4, 2004, Ramsey filed its answer in this Court and asserted as counterclaims the same three claims as in its W.D. Ky. complaint (Dkt. No. 27: Ramsey Ans.: Counterclaim ¶¶ 1–44), essentially making the S.D.N.Y. action identical to the Kentucky action.

Presently before this Court is Ramsey's motion to dismiss Schnabel's action or, in the alternative, to transfer this suit to the Western District of Kentucky. (Dkt. No. 2: Ramsey Motion.)

### *ANALYSIS*

#### I. *THE FIRST FILED RULE: LEGAL PRINCIPLES*

█ "Courts in this Circuit adhere to the first filed rule: 'Where two courts have

---

**2.** Ramsey was served with Schnabel's S.D.N.Y. Complaint on January 16, 2003.

(Dkt. No. 3: Ramsey Br. at 4; Dkt. No. 2: Ramsey Motion Ex. 5: 1/15/04 Letter.)

concurrent jurisdiction over an action involving the same parties and issues, courts will follow a "first filed" rule whereby the court which first has possession of the action decides it.'" *Clarendon Nat'l Ins. Co. v. Pascual,* 99 Civ. 10840, 2000 WL 270862 at *7 (S.D.N.Y. Mar. 13, 2000) (Peck, M.J.) (quoting *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 131 (S.D.N.Y.1994)); *see also, e.g., Buddy USA, Inc. v. Recording Indus. Ass'n of Am., Inc.,* 21 Fed.Appx. 52, 55, 2001 WL 1220548 at *2 (2d Cir.2001); *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1025 (2d Cir.1991) ("The 'first filed' rule states that 'where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action.'") (quoting *Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir.1974)); *see also* cases cited in the next paragraph.

"[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second. Deference to the first filing embodies considerations of judicial administration and conservation of resources. The decision whether or not to stay or dismiss a proceeding rests within a district judge's discretion." *Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991) (citations & internal quotations omitted); *accord, e.g., BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., Inc.,* 21 Fed.Appx. at

*55 ( & cases cited therein); *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir.1989) (referring to this rule as "the well-settled principle in this Circuit") (citing cases); *Factors Etc., Inc. v. Pro Arts. Inc.,* 579 F.2d 215, 218–19 (2d Cir.1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *William Gluckin & Co. v. International Playtex Corp.,* 407 F.2d 177, 178 (2d Cir.1969) (citing cases).[3]

■ "'[T]here is a strong presumption in favor of the forum of the first-filed suit.'" *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d at 54; *accord, e.g., J. Lyons & Co. v. Republic of Tea, Inc.,* 892 F.Supp. at 493. "The party opposing application of the first-filed doctrine has the burden to show that special circumstances justify an exception." *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d at 54; *accord, e.g., Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d at 218; *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d at 555–56; *J. Lyons & Co. v. Republic of Tea, Inc.,* 892 F.Supp. at 491. It is well established that the Court has wide discretion in deciding whether or not to stay or dismiss a proceeding. *See, e.g., Adam v. Jacobs,* 950 F.2d at 92; *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d at 218–19.

As between this Court and the Western District of Kentucky, it is up to this Court to decide which forum will hear these actions: "This District has laid down a bright-line rule for situations such as this: "The court before which the first-filed action was brought determines which forum

---

3.  *See also, e.g., Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,* 178 F.Supp.2d 459, 461, 464–65 (S.D.N.Y.2002); *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 54 (S.D.N.Y. 2001); *Chicago Ins. Co. v. Holzer,* 00 civ. 1062, 2000 WL 777907 at *2 (S.D.N.Y. June 16, 2000); *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 555 (S.D.N.Y.2000) (describing rule as a " 'well-settled principle' ");

*Ontel Prods., Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1150 (S.D.N.Y.1995); *J. Lyons & Co. v. Republic of Tea, Inc.,* 892 F.Supp. 486, 490–91 (S.D.N.Y.1995); *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. at 132; *Employers Ins. of Wausau v. Prudential Ins. Co. of Am.,* 763 F.Supp. 46, 48 (S.D.N.Y.1991).

will hear the case." *MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F.Supp.2d 266, 267 (S.D.N.Y.2002) (citing cases); *accord, e.g., Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d at 54 n. 2; *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp.2d 433, 440 (S.D.N.Y.2000); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d at 557 n. 4; *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1150 n. 9 (S.D.N.Y.1995) ("Case law indicates that the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies."); *Donaldson, Lufkin & Jenrette, Inc. v. Los Angeles County*, 542 F.Supp. 1317, 1321 (S.D.N.Y.1982). Schnabel filed this action on November 5, 2003 in this Court. On December 17, 2003, Ramsey filed a similar action arising out of the same dispute in the Western District of Kentucky. Since this Court clearly was the court in which an action was first filed, this Court should decide which Court will hear this case.[4]

## II. *RAMSEY PRESENTS NO SPECIAL CIRCUMSTANCES TO SUPPORT AN EXCEPTION TO THE FIRST FILED RULE*

Ramsey asserts that the first-filed rule does not apply and that preference should be given to the second-filed suit in Kentucky because, *inter alia*, special circumstances exist. (Dkt. No. 3: Ramsey Br. at 5–6.)

■ Special circumstances are present when the first suit was filed as a result of forum shopping or when the first suit was a result of "anticipatory filing." *See, e.g., William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969); *Raytheon Co. v. National Union Fire Ins. Co.*, 306 F.Supp.2d 346, 352 (S.D.N.Y.2004); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d 49, 54 (S.D.N.Y. 2001); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549, 556 (S.D.N.Y.2000).

■ Ramsey suggests that the suspicious timing of Schnabel's filing the S.D.N.Y. complaint but delaying service indicates that Schnabel filed his declaratory judgment action in anticipation of Ramsey filing a lawsuit against him and that Schnabel was forum shopping. (Dkt. No. 3: Ramsey Br. at 5–6.)

The Second Circuit recently summarized the law regarding "special circumstances" surrounding a declaratory judgment action, explaining that a declaratory judgment is considered "anticipatory" if filed in response to a demand letter specifically threatening litigation, but is not anticipatory where it is in response to a negotiating letter:

> One type of special circumstance is present where the first, declaratory action is filed in response to a direct threat of litigation. "When the declaratory action has been triggered by a notice letter, this equitable consideration may be a factor in the decision to allow the later filed action to proceed to judgment in the plaintiffs' chosen forum." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 219 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). "[T]he federal declaratory

---

4. The relative dates of service of the complaints are irrelevant to the inquiry of which action was first filed. *E.g., Berisford Capital Corp. v. Central States, S.E. & S.W. Areas Pension Fund*, 677 F.Supp. 220, 222 n. 1 (S.D.N.Y.1988) ("The 'first service' rule is not the law of this circuit."); *See, e.g., MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F.Supp.2d at 268 n. 5; *but cf. Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F.Supp.2d at 463–64 (citing cases).

judgment is not a prize to the winner of a race to the courthouses." *Id* . . . .

*Following Factors, district courts have typically found an exception to the first-filed rule where declaratory actions are filed in response to demand letters that give specific warnings as to deadlines and subsequent legal action.* In *Fed. Ins. Co. v. May Dep't Stores Co.,* 808 F.Supp. 347 (S.D.N.Y.1992), the court held that one can infer forum shopping from the fact that the declaratory action was filed after receipt of letter notice stating that if the sender's claim was not satisfied by a specific date, then defendant would sue. *Id.* at 350. In *Chicago Ins. Co. v. Holzer,* the district court held that the specific warning requirement was met by a notice letter stating that if the recipient's decision "remains unaltered, we will commence suit in a court of appropriate jurisdiction in forty eight (48) hours." 2000 WL 777907 at *1 (S.D.N.Y. June 16, 2000). The district court also noted that the recipient responded by filing suit in 24 hours. *See id.* at *3. Taken together, these two facts supported the conclusion that the first-filed suit was an attempt to preempt legal action. *See id.* Finally, the court in *Mondo, Inc. v. Spitz* reached a similar conclusion where a declaratory judgment action was filed after receipt of a letter stating the sender's "intention to file suit in California if settlement negotiations were not fruitful." 1998 WL 17744 at *1 (S.D.N.Y. Jan. 16, 1998). The recipient of the letter filed a declaratory judgment action two weeks later. *See id.*

*By contrast, district courts have often refused to characterize a suit as anticipatory where it is filed in response to a notice letter that does not explicitly "inform[ ] a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit . . . ." J.* *Lyons & Co., Ltd. v. Republic of Tea, Inc.,* 892 F.Supp. 486, 491 (S.D.N.Y. 1995). For example, a declaratory action is not anticipatory where it is filed in response to a letter that is indicative of negotiations. *See, e.g., id.* In *J. Lyons,* the sender's demand letter mentioned "the possibility of legal actions" without specifying date or forum, and when the alleged infringer refused to cease and desist, the sender merely responded that it would take the refusal "under advisement." *Id.* In this context, the declaratory action was not anticipatory as required in order to justify departure from the first-filed rule.

*BuddyUSA, Inc. v. Recording Indus. Ass'n of Am., Inc.,* 21 Fed.Appx. 52, 55–56, 2001 WL 1220548 at *2–3 (2d Cir. 2001) (emphasis added). *Compare, e.g., National Union Fire Ins. Co. v. International Wire Group, Inc.,* 02 Civ. 10338, 2003 WL 21277114 at *6 (S.D.N.Y. June 2, 2003) (first filed suit dismissed as "anticipatory" where brought after receipt of letter clearly announcing other party's intention to bring suit in Texas); *Chicago Ins. Co. v. Holzer,* 00 Civ. 1062, 2000 WL 777907 at *1, 4 (S.D.N.Y. June 16, 2000) (specific warning requirement was met by letter stating that if recipient's decision " 'remains unaltered, we will commence suit in a court of appropriate jurisdiction in forty eight (48) hours' "); *Mondo, Inc. v. Spitz,* 97 Civ. 4822, 1998 WL 17744 at *1–2 (S.D.N.Y. Jan. 16, 1998) (Declaratory judgment action filed after receipt of a letter stating the sender's "intention to file suit in California if settlement negotiations were not fruitful" was anticipatory filing.); *Federal Ins. Co. v. May Dep't Stores Co.,* 808 F.Supp. 347, 350 (S.D.N.Y. 1992) (Declaratory judgment action found to be anticipatory when filed after receipt of letter stating that if sender's claim was not satisfied by a specific date, defendant

would sue.); *with, e.g., J. Lyons & Co. v. Republic of Tea, Inc.,* 892 F.Supp. 486, 491 (S.D.N.Y.1995) ("When a notice letter informs a defendant of the intention to file suit, a filing date, and/or a specific forum for the filing of the suit, the courts have found, in the exercise of discretion, in favor of the second-filed action." Here, second-filed S.D.N.Y. action dismissed in favor of first-filed declaratory judgment action where cease and desist letter mentioned possibility of litigation but did not specify any date or forum.); *Employers Ins. of Wausau v. Prudential Ins. Co.,* 763 F.Supp. 46, 49 (S.D.N.Y.1991) (letter stating that defendant " 'hoped to avoid litigation' " was at best an attempt to initiate settlement negotiations and cannot reasonably be construed as a notice of suit. . . . Communications deemed to constitute notice of suit generally contain at least one of those elements," *i.e.,* "mentioning a lawsuit, a tentative filing date or a forum.").

Ramsey contends that Schnabel's filing of this lawsuit two days after receipt of what Ramsey considers a "notice" email from Ramsey constitutes anticipatory filing. (Dkt. No. 3: Ramsey Br. at 5). However, Ramsey's November 3, 2003 email letter to Schnabel contains no explicit mention of a lawsuit, forum, deadline or filing date, and thus is insufficient to constitute notice of a lawsuit under the above cases. (Dkt. No. 2: Ramsey Motion Ex. 1: Ramsey Aff.: Att: 11/3/03 Letter). And while Ramsey's October 29, 2003 email threatened that Ramsey would "take 'all necessary action to protect [its] interests' " (*see* Dkt. No. 13: Schnabel Br. at 10), the Court considers such communication an attempt to initiate settlement negotiations rather than notice of suit. *See, e.g., Employers Ins. of Wausau v. Prudential Ins. Co.,* 763 F.Supp. at 49 (letters stating intent to "pursue all available remedies" and "hoped to avoid litigation" were merely attempts to initiate settlement negotiations rather than notice of a lawsuit).

■ Ramsey also argues that Schnabel's mere commencement of a declaratory judgment itself establishes that Schnabel "engaged in forum shopping." (Ramsey Br. at 6.) However, the first filed rule "has been applied in actions regardless of whether a declaratory judgment was sought in the initial action. Accordingly, the fact that [a party] sought declaratory judgment is not dispositive of the issue . . . A party's reasonable apprehension of a legal controversy may be sufficient to satisfy the requirements of a justiciable controversy without rising to the level of a direct threat of imminent litigation. Were this not the case, each time a party sought declaratory judg[ ]ment in one forum, a defendant filing a second suit in a forum more favorable to defendant could always prevail under the anticipatory filing exception." *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 132 (S.D.N.Y.1994) (citations omitted); *see, e.g., Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,* 178 F.Supp.2d 459, 469–70 (S.D.N.Y.2002); *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 54–55 (S.D.N.Y.2001); *see also, e.g., Ontel Prods., Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1150–52 (S.D.N.Y.1995).

■ Ramsey also claims that Schnabel engaged in forum shopping by initiating suit in New York. (Dkt. No. 16: Ramsey Reply Br. at 9.) The Court disagrees. " 'Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice.' " *Everest Capital Ltd. v. Everest Funds Mgmt.,* 178 F.Supp.2d at 470 (quoting *Riviera Trading Corp. v. Oakley, Inc.,* 944 F.Supp. 1150, 1158 (S.D.N.Y.1996)). A party who appropri-

ately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping. *See, e.g., J. Lyons & Co. v. Republic of Tea, Inc.,* 892 F.Supp. at 491. Schnabel resides in New York, developed his computer program in New York, and met with Ramsey in New York to discuss his employment contract. Schnabel's choice of this forum does not suggest forum shopping.

Finally, the Court notes that the parties' briefs, and hence this Opinion, have focused on the declaratory judgment claim in Schnabel's complaint. (Dkt. No. 1: Compl. ¶¶ 14–18.) Schnabel's second and third causes of action, however, assert direct claims for breach of contract. (Compl.¶¶ 19–25.) This is even more reason to apply the first filed rule and stay the second, Kentucky action.

Accordingly, the Court finds that Ramsey has failed to demonstrate "special circumstances" to justify an exception to the first filed rule.

### III. RAMSEY HAS FAILED TO SHOW THAT THE BALANCE OF CONVENIENCE FAVORS TRANSFERRING THE CASE TO KENTUCKY AS AN EXCEPTION TO THE FIRST FILED RULE OR PURSUANT TO § 1404

Ramsey also argues that the balance of convenience exception to the first-filed rule demonstrates that the first-filed rule should not apply, or in the alternative, that this Court should transfer the action to the Western District of Kentucky pursuant to 28 U.S.C. § 1404(a), considering the convenience of parties and the interests of justice. (Dkt. No. 3: Ramsey Br. at 6–13.)

■ Balancing the competing interests, the second exception to the first filed rule,

encompasses the same analysis as under a 28 U.S.C. § 1404(a) transfer motion: "Because the factors to consider are substantially identical in weighing the balance of convenience for application of the first-filed rule and in ruling on a motion to transfer venue, a single analysis of the factors will resolve both issues." *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,* 178 F.Supp.2d 459, 465 (S.D.N.Y. 2002); *see, e.g., Raytheon Co. v. National Union Fire Ins. Co.,* 306 F.Supp.2d 346, 353 n. 40 (S.D.N.Y.2004); *Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d 49, 56 (S.D.N.Y.2001); *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F.Supp.2d 433, 440 (S.D.N.Y.2000); *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d 549, 560 (S.D.N.Y.2000); *J. Lyons & Co. v. Republic of Tea, Inc.,* 892 F.Supp. 486, 491–92 (S.D.N.Y.1995); *800-Flowers. Inc., v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 133 (S.D.N.Y.1994); *National Patent Dev. Corp. v. American Hosp. Supply Corp.,* 616 F.Supp. 114, 118–19 (S.D.N.Y.1984) (Weinfeld, D.J.); *see also, e.g., Ontel Prods., Inc. v. Project Strategies Corp.,* 899 F.Supp. 1144, 1153 (S.D.N.Y.1995).

The change of venue statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Thus, a 'court may transfer an action only if 1) the plaintiff could have brought the case initially in the proposed transferee forum; and 2) the transfer would promote the convenience of parties and witnesses and would be in the interests of justice.'" *Coker v. Bank of Am.,* 984 F.Supp. 757, 764 (S.D.N.Y.1997) (Keenan, D.J. & Peck, M.J.) (quoting *Howard v. Four Seasons Hotels Ltd.,* 96 Civ. 4587, 1997 WL 107633

at *1 (S.D.N.Y. March 10, 1997)).[5]

■ As to the first prong, neither party disputes that both this District and the Western District of Kentucky would have been a proper forum under 28 U.S.C. § 1391, which provides that a case may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). (*See* Dkt. No. 13: Schnabel Br. at 18; Dkt. No. 3: Ramsey Br. at 12.) A substantial part of the events giving rise to this lawsuit took place in both the Western District of Kentucky and the Southern District of New York. (*See* pages 2–4 above.)

Thus, the remaining question, under the second prong, is whether the case should be transferred under § 1404(a) as a matter of judicial discretion. *See, e.g., Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 520 (2d Cir. 1989) ("The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court."); *see also, e.g., Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862 at *3; *Coker v. Bank of Am.,* 984 F.Supp. at 764 ( & cases cited therein).

As to the second prong, the movant— here, Ramsey—"must satisfy the 'heavy' burden of demonstrating that a weighing of the appropriate factors dictates that the case be transferred." *Coker v. Bank of*

*Am.,* 984 F.Supp. at 764; *accord, e.g., Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862 at *3; *see also, e.g., In re Warrick,* 70 F.3d 736, 740–41 (2d Cir.1995) (plaintiff's forum choice entitled to "substantial consideration"); *Panama Processes, S.A. v. Cities Serv. Co.,* 650 F.2d 408, 414 (2d Cir.1981); *Factors Etc., Inc. v. Pro Arts. Inc.,* 579 F.2d 215, 218 (2d Cir.1978) ("There can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum."), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *S–Fer Int'l, Inc. v. Paladion Partners, Ltd.,* 906 F.Supp. 211, 213 (S.D.N.Y.1995); *Xpressions Footwear Corp. v. Peters,* 885 F.Supp. 630, 633 (S.D.N.Y.1995).[6]

" 'The moving party may meet its burden by applying the following established factors to guide the court's discretion:' "

"(1) the place where the operative facts occurred; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the relative ease of access of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the plaintiff's choice of forum; (7) the forum's familiarity with the governing law; and (8) trial efficiency and the interests of justice."

*Coker v. Bank of Am.,* 984 F.Supp. at 764 (quoting *Howard v. Four Seasons Hotels,* 1997 WL 107633 at *2) ( & cases cited in *Coker*); *accord, e.g., Clarendon Nat'l Ins.*

---

**5.** *Accord, e.g., Clarendon Nat'l Ins. Co. v. Pascual,* 99 Civ. 10840, 2000 WL 270862 at *2 (S.D.N.Y. Mar. 13, 2000) (Peck, M.J.); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 51 F.Supp.2d 457, 467 (S.D.N.Y.1999); *Geiger v. E.I. Du Pont Nemours & Co.,* 96 Civ. 2757, 1997 WL 83291 at *3 (S.D.N.Y. Feb. 27, 1997).

**6.** *See also, e.g., Old Republic Ins. Co. v. Hansa World Cargo Serv.,* 51 F.Supp.2d at 467; *Howard v. Four Seasons Hotels,* 1997 WL 107633 at *2 ("Section 1404(a) requires the moving

party to satisfy a heavy burden."); *Geiger v. E.I. Du Pont Nemours & Co.,* 1997 WL 83291 at *4 (same); *Raines v. Switch Mfg. Corp.,* 96 Civ. 2361, 1996 WL 413720 at *1 (S.D.N.Y. July 24, 1996) (movant "has the burden of establishing the propriety of the transfer by a clear and convincing showing"); *Douglas v. Syracuse Univ. Coll. of Law,* 94 Civ. 9195, 1995 WL 555693 at *1 (S.D.N.Y. Sept. 18, 1995); *Dwyer v. General Motors Corp.,* 853 F.Supp. 690, 692 (S.D.N.Y.1994).

*Co. v. Pascual,* 2000 WL 270862 at *3.[7] A ninth factor is "the relative means of the parties." *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,* 178 F.Supp.2d at 465; *see also, e.g., Reliance Ins. Co. v. Six Star, Inc.,* 155 F.Supp.2d at 56–57; *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F.Supp.2d at 436; *Citigroup Inc. v. City Holding Co.,* 97 F.Supp.2d at 560–61; *800–Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. at 133, 135. The parties recognize, as they must,. that these are the nine factors for the Court to consider. (Dkt. No. 3: Ramsey Br. at 7; Dkt. No. 13: Schnabel Br. at 12.)

The first factor, the place where the underlying facts of the case took place, is a wash—there was activity in New York (Schnabel's creation of his program and negotiation of his employment contract) and in Kentucky (Ramsey's creation of its computer program and Schnabel's work for Ramsey), and there is no way to tell from the parties' submissions at this stage of the case whether more of the case-significant activity took place in New York or Kentucky. *See, e.g., Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862 at *4; *Fintech Research Assocs., Inc. v. Dynagro Corp.,* 96 Civ. 8156, 1998 WL 148423 at *3 (S.D.N.Y. March 27, 1998) (where facts occurred in both New York and California, location where operative facts occurred does not favor either party); *Aarons v. Worldtel Services, Inc.,* 95 Civ. 8415, 1996 WL 185714 at *4 (S.D.N.Y. April 17, 1996) (same); *GPA Inc. v. Liggett Group, Inc.,* 94 Civ. 5735, 1994 WL 537017 at *2 (S.D.N.Y. Oct. 4, 1994); *Don King Prods., Inc. v. Douglas,* 735 F.Supp. 522, 534 (S.D.N.Y.1990).

The second factor, convenience of the parties, is neutral if it merely shifts the burden of inconvenience to the other party. *E.g., Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862 at *4. Schnabel claims that he would suffer great hardship at work, economically, and personally in light of to the premature birth of his son, if he had to travel to Kentucky. (Dkt. No. 13: Schnabel Br. at 14–16.) Schnabel correctly notes that transfer of the action to Kentucky would merely reallocate inconvenience from Ramsey to Schnabel. (Schnabel Br. at 14.) Here, since each party will be inconvenienced if the litigation is in the forum desired by the other, this factor is neutral.

The third factor is the convenience of the forum for witnesses. "The convenience of both party and non-party witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." *Coker v. Bank of Am.,* 984 F.Supp. at 765 (internal quotation marks omitted); *accord, e.g., Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862 at *5.[8]

To succeed on a transfer motion, however, the moving party—here, defen-

---

7. *See also, e.g., Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,* 178 F.Supp.2d at 465; *Wechsler v. Macke Int'l Trade, Inc.,* 99 Civ. 5725, 1999 WL 1261251 at *3 (S.D.N.Y. Dec. 27, 1999); *Smart v. Goord,* 21 F.Supp.2d 309, 315 (S.D.N.Y.1998); *Geiger v. E.I. DuPont Nemours & Co.,* 1997 WL 83291 at *4; *Xpressions Footwear Corp. v. Peters,* 885 F.Supp. at 633; *J. Lyons & Co. v. Republic of Tea, Inc.,* 892 F.Supp. at 492; *Tomchuck v. Union Trust Co.,* 875 F.Supp. 242, 243 (S.D.N.Y.1995).

8. *See also, e.g., Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.,* 178 F.Supp.2d at 465; *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F.Supp.2d at 437; *Howard v. Four Seasons Hotels,* 1997 WL 107633 at *2; *Raines v. Switch Mfg. Corp.,* 1996 WL 413720 at *2 (the "convenience of the party and non-party witnesses is particularly important"); *Arrow Elecs., Inc. v. Ducommun Inc.,* 724 F.Supp. 264, 265 (S.D.N.Y.1989); 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3851 at 415–17.

dant Ramsey—"must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d at 218; *accord, e.g., Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862 at \*6; *Wechsler v. Macke Int'l Trade, Inc.,* 1999 WL 1261251 at \*6; *Coker v. Bank of Am.,* 984 F.Supp. at 765; *Xpressions Footwear Corp. v. Peters,* 885 F.Supp. at 633; *Tomchuck v. Union Trust Co.,* 875 F.Supp. at 244.[9]

Ramsey has made no such showing here. Ramsey's recitation that "all potential witnesses are located in Louisville, and Louisville is the location where the events giving rise to this litigation occurred" (Ramsey Br. at 7) neither identifies the witnesses nor shows why these individuals will be necessary for the defense at trial. The affidavits submitted by Ramsey are from individuals who are either officers or employees of Ramsey, not non-party witnesses. (Dkt. No. 16: Satterfield Aff. ¶ 2 (Director of Trading for Ramsey); Dkt. No. 2: Ramsey Motion Ex. 1: Neil Ramsey Aff. ¶ 2 (President of Ramsey Quantitative Systems); *id.* Ex. 3: Satterfield Aff. ¶ 2 (Director of Trading for Ramsey); *id.* Ex. 4: Davis Aff. ¶ 2 (Ramsey Office Administrator); *id.* Ex. 7: Hall Aff. ¶ 2 (Ramsey Fund Administrator).) The additional witnesses identified in Ramsey's Reply Brief also are Ramsey employees. (*See* Dkt. No. 16: Ramsey Reply Br. at

10–11.) There is nothing to suggest these employee-witnesses would be unwilling to appear for trial in New York at Ramsey's request.[10] Because Ramsey has not identified any non-party witnesses, the argument that only the Western District of Kentucky can compel attendance of non-party witnesses who are located in Louisville is irrelevant.[11]

While the location of witnesses factor slightly favors transfer, it is insufficient because of Ramsey's failure to be more specific on this issue and in light of the other factors favoring denial of transfer. *See, e.g., Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862 at \*6 ( & cases cited therein); *Smith McDonnell Stone & Co. v. Delicato Vineyards,* 94 Civ. 6474, 1995 WL 33306 at \*3–4 (S.D.N.Y. Jan. 26, 1995); *S & S Mach. Corp. v. General Motors Corp.,* 93 Civ. 3237, 1994 WL 529867 at \*7–8 (S.D.N.Y. Sept. 28, 1994); *Beverage Mktg. Corp. v. Emerald Coast Spring Water Co.,* 697 F.Supp. 767, 769–70 (S.D.N.Y.1988); *First Nat'l City Bank v. Nanz, Inc.,* 437 F.Supp. 184, 189 (S.D.N.Y.1975) (declining to transfer even where defendant's non-party witnesses were not subject to compulsory process by the Court, where no showing that these "witnesses could not or would not appear at a trial in New York," and other factors weighed against transfer); *cf. Computer Operations, Inc. v. Digital Equip. Corp.,* 387 F.Supp. 8, 11 (E.D.N.Y.1975) ("Section 1404(a) was de-

---

**9.** *See also, e.g., Howard v. Four Seasons Hotels,* 1997 WL 107633 at \*3; *Geiger v. Du Pont,* 1997 WL 83291 at \*5; *Falconwood Fin. Corp. v. Griffin,* 838 F.Supp. 836, 840–41 (S.D.N.Y.1993) (Leval, D.J.); *Don King Prods., Inc. v. Douglas,* 735 F.Supp. at 534, 15, Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3851 at 424–32 (citing cases).

**10.** Under the usual rules for location of depositions, depositions of Ramsey employees will take place in Kentucky regardless of whether

the action remains in this Court. *See, e.g., Buzzeo v. Board of Educ.,* 178 F.R.D. 390, 392 (E.D.N.Y.1998) (citing cases); *Snow Becker Krauss P.C. v. Proyectos E Instalaciones De Desalacion, S.A.,* 92 Civ. 2644, 1992 WL 395598 at \*3 (S.D.N.Y. Dec. 11, 1992.)

**11.** Schnabel's main witness, beside himself, is his father, who resides in Florida, and as both sides concede, either forum is equally inconvenient to him. (Ramsey Br. at 8; Schnabel Br. at 14.)

signed primarily for those cases ... where defendant's essential witnesses were not under its control and were located in the proposed transferee district and plaintiff could not make the same claim as to its witnesses in the transferor district....").[12]

The fourth factor, ease of access to proof, is also neutral. Both sides agree that physical evidence, including the computer Schnabel used while at Ramsey and the forensics reports that detail the proprietary information Schnabel allegedly deleted, is located in Louisville. On the other hand, as Schnabel points out, the majority of the evidence concerning the development, completion, and operation of Schnabel's equity trading computer program is located in New York (and Florida), as is the copy of Ramsey's computer program that Schnabel allegedly removed from Ramsey's computer. (Schnabel Br. at 15.) Transfer to either forum would only serve to shift the burden of access. *E.g., Coker v. Bank of Am.*, 984 F.Supp. at 766 ("In today's era of photocopying, fax machines and Federal Express," location of documents factor is neutral); *accord, e.g., Clarendon Nat'l Ins. Co. v. Pascual*, 2000 WL 270862 at *4; *see also, e.g., Fintech Research Assoc. Inc. v. Dynagro Corp.*, 1998 WL 148423 at *3; *Aarons v. Worldtel Servs., Inc.*, 1996 WL 185714 at *4; *S–Fer Int'l, Inc. v. Paladion Partners Ltd.*, 906 F.Supp. at 215 ("A transfer to California would do no more than shift the burden of transporting documents from one coast to the other. A zero-sum exchange of burden does not favor a transfer."); *Falconwood Fin. Corp. v. Griffin,*

838 F.Supp. at 841 (location of records is "not a compelling consideration when records are easily portable"); 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3853 at 439.

The fifth factor, the availability of process to compel attendance of unwilling witnesses, as discussed already, is mostly irrelevant as it appears that all of Ramsey's witnesses are its officers and employees.

The sixth factor, plaintiff's choice of forum, weighs heavily towards New York. The deference to plaintiff's choice of forum not only places the burden of proof on the defendant moving for a transfer, but is also a factor to be considered in its own right:

> [A] defendant has the burden of making out a strong case for a transfer and ... plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the "convenience" of the witnesses or what might otherwise be the balance of "convenience" as between the parties.

*Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950); *accord, e.g., Clarendon Nat'l Ins. Co. v. Pascual*, 2000 WL 270862 at *4–5; *Sterling Nat'l Bank & Trust Co. v. Cencor, Inc.*, 91 Civ. 8264, 1992 WL 176588 at *2 (S.D.N.Y. July 15, 1992); *see also, e.g., Smart v. Goord*, 21 F.Supp.2d at 315 ("A court must give significant consideration to a plaintiff's choice of venue, not disturbing it unless other

---

**12.** The Court also notes that while a deposition, even if videotaped, is not a perfect substitute for a witness's appearance at trial, the ability to videotape depositions makes the non-party witness availability factor less compelling than in pre-videotape days, at least where other factors do not favor transfer. *See, Clarendon Nat'l Ins. Co. v. Pascual*, 2000 WL 270862 at *6 n. 7; *Longo v. Wal–Mart*

*Stores, Inc.*, 79 F.Supp.2d 169, 171 (E.D.N.Y. 1999) (citing cases and materials on the use of videotaped depositions at trial); *Carron v. Holland Am. Line–Westours Inc.*, 51 F.Supp.2d 322, 326–27 (E.D.N.Y.1999) (noting alternatives to live testimony when witnesses are distant); *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 907 (S.D.N.Y. 1983).

factors weigh strongly in favor of transfer."); *Coker v. Bank of Am.*, 984 F.Supp. at 766 ("A plaintiff's choice of forum is generally given substantial weight.") ( & cases cited therein).[13] Plaintiff Schnabel is a resident of New York (*see* Schnabel Br. at 12),[14] relevant facts such as his creation of the computer program took place in New York (Schnabel Br. at 17), and therefore Schnabel's choice of forum is given significant weight.

As to the seventh factor, the governing law, it is not clear at this point whether New York or Kentucky law will apply; nevertheless, there is no doubt that this Court is qualified to apply New York's choice of law rules and either state's substantive law to Schnabel's claims. *See, e.g., Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862 at *5; *Coker v. Bank of Am.*, 984 F.Supp. at 766 ( & cases cited therein); *S–Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F.Supp. at 215–16 ("[E]ven if California law governs this dispute, the legal issues involve relatively unexceptional questions of contract and fraud. If New York's choice of law rules provide that California law is the appropriate law to apply, ... then a New York court will be capable of applying it.").

As to the eighth factor, trial efficiency and the interests of justice, Ramsey argues that this action should be transferred to Kentucky to avoid duplication with Ramsey's Kentucky action. (Ramsey Br. at 11.) That, of course, ignores the first filed rule, which requires the second action (Ramsey's Kentucky action) to give way to the first filed action absent special circumstances, here absent. Moreover, since Ramsey has now filed counterclaims against Schnabel, all of Ramsey's Kentucky claims are now present in this action. This factor thus does not favor transfer to Kentucky. The Court also notes that discovery has commenced in this District, under a schedule that calls for the completion of discovery by August 31, 2004 and the filing of the Pretrial Order (or a summary judgment motion) by September 20, 2004. (Dkt. No. 23: 5/21/04 Scheduling Order.) As far as this Court can tell, the case will be trial ready in this District before it would be trial ready in Kentucky—which favors continuing this action here rather than transferring it to Kentucky. *See, e.g., Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F.Supp.2d at 439.

As to the ninth factor, where a disparity exists between the means of the parties, the Court may consider the relative means of the parties in determining where a case should proceed. *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F.Supp.2d at 467; *see also e.g., Reliance Ins. Co. v. Six Star, Inc.*, 155 F.Supp.2d at 59; *800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. at 135. This factor weights in Schnabel's favor. Schnabel points out that Ramsey has ample resources to support travel to New York of defendant's witnesses, and would suffer no

---

**13.** *See also, e.g., R. Siskind & Co. v. Ashworth, Inc.*, 95 Civ. 7707, 1996 WL 167722 at *4 (S.D.N.Y. Apr. 10, 1996); *S–Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F.Supp. at 213, 214; *Xpressions Footwear Corp. v. Peters;* 885 F.Supp. at 633; *see generally* 15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 2d* § 3848 (citing cases).

**14.** According to Schnabel, while Ramsey "states in its motion that Schnabel appears to still reside in Louisville ... [Ramsey] is well aware that Schnabel resides in New York and left Louisville, Kentucky at the end of October 2003 upon his termination of employment with [Ramsey].... Schnabel is a resident of New York and was a resident of New York prior to and at the time he accepted employment with [Ramsey] and at the time of filing his Complaint." (Schnabel Br. at 12–13; *see also id.* at 17; Schnabel Aff. ¶ 2.)

great hardship to travel. (Schnabel Br. at 15–16.) Ramsey is a corporation with the means to litigate in a distant forum, and has not suggested that traveling to New York would substantially impair its operations. Schnabel, who works independently in equity trading, is much more likely to suffer adverse monetary consequences as a result of traveling to litigate the matter in Kentucky.

Overall, considering that the burden is on defendant Ramsey to demonstrate that as a matter of convenience the litigation should proceed in Kentucky rather than New York, the Court concludes that Ramsey has not met its burden. Transferring the case to Kentucky would merely result in shifting any inconvenience from Ramsey to Schnabel. Accordingly, the balance of convenience does not justify a departure from the first filed rule, and plaintiff Schnbel's choice of forum will not be disturbed.

## CONCLUSION

The Court concludes that the first filed rule governs this matter. Ramsey has demonstrated neither special circumstances sufficient to create an exception to the first filed rule, nor has Ramsey met its heavy burden of showing that the factors considered in balancing the conveniences favors Kentucky sufficiently to warrant a dismissal or transfer of the case to the Western District of Kentucky as an exception to the first filed rule or under 28 U.S.C. § 1404.

Accordingly, Ramsey's motion to dismiss or transfer is *DENIED*. Schnabel has not asked this Court to enjoin Ramsey's pursuit of the Kentucky action, but it is implicit in this Court's ruling on Ramsey's motion that Ramsey will not pursue the Kentucky action. If further relief is necessary and desired by Schnabel, he should apply for it (but the Court expects that will not be necessary).

**SO ORDERED.**